## IN PROBATE.—JUNE, 1856.

## IN THE MATTER OF THE ESTATE OF HAKAU, Deceased.

A party, at the hearing of an application for the appointment of an administrator on his aunt's estate, stated that " he had received his share of her property before her death," and therefore did not claim any share of the property she left at her decease.　After the party's decease, his administrator claimed his share in his aunt's property, and introduced evidence to show that his admission of having received his share in his aunt's lifetime was not true, and made with a fraudulent intent. Held, that his administrator's claim should be sustained.

JUDGE ROBERTSON delivered the decision of the Court as follows:

On the 8th of March last, Samuel Kaanaana, the administrator on the estate of Hakau, was discharged by JUDGE ANDREWS, upon submitting a report of his administration, and a statement of a division between the surviving heirs of Hakau.

J. W. Marsh, administrator on the estate of Kahiwalani, a deceased nephew of Hakau, appealed from JUDGE ANDREWS' order discharging the administrator of Hakau, on the ground that proper notice had not been previously given to those interested in the estate, to appear at the hearing, and contest, if they desired to do so, the administrator's application.　That appeal was heard by this court, on the 19th of March, and the matter remanded to the Probate Court, for a rehearing.

The matter was, accordingly, re-heard by JUDGE ANDREWS, after due public notice, and on the 2d of May, he delivered his judgment, confirming the division of Hakau's property between Samuel Kaanaana, and Waakahi, nephews, and Moii, the niece of the deceased, and Manoa, a distant relation of Hakau's first husband.　The judge, at the same time, refused to admit the claim to a share of Hakau's property, made by the administrator of Kahiwalani, on the ground that, at the hearing of the application for letters of administration on the estate of Hakau, in January, 1855, Kahiwalani, who was then alive and present, stated voluntarily and upon oath, that " he had received his share before his mother's (aunt's) death," and this statement the judge considered conclusive.

Kahiwalani's administrator now appeals from this decision on two grounds, first, that Manoa is not legally entitled to any share of the property of Hakau; and secondly, that Kahiwalani's statement to the effect that " he had received his share before his mother's death," ought not by itself to be regarded as conclusive, and is negatived by the facts and circumstances of the case, as presented in evidence, and by his own acts and conduct subsequently to the time of Hakau's death.

So far as the claim of Manoa to a share of the property is concerned, we are clearly of the opinion that the judgment of the court below cannot be sustained.　Under the Statute regulating the descent of property, passed in 1850, the estate of Hakau is distributable among the children of her deceased brothers and sisters, and these, as appears by the evidence, are Samuel Kaanaana, Waakahi, Moii, and Kahiwalani, the last of whom died since Hakau's death.　We

think it is clearly proved by the testimony of I, and other witnesses, that Manoa was not related, even in the most remote degree, to Hakau, but was merely connected in some way with her first husband, Kahananui, sen. Nor do we think that, although Manoa lived in the family of Hakau for a great length of time, there is satisfactory evidence to show that she had formally adopted him as her child, or any evidence whatever that she intended him to share in her property, with her nephews and niece. Had Manoa been adopted by Hakau as her son, in due form of law, he would have been sole heir to her estate, upon her dying intestete. And we cannot see how he can claim any share whatever, unless he can do so as the adopted son of the deceased, for he certainly cannot claim to inherit, as being the child of any of her brothers or sisters. We are of opinion, therefore, that his claim cannot be allowed.

Let us now proceed to consider the claim set up on behalf of the estate of Kahiwalani. We think this rests entirely upon one question and that a question of fact, viz: did, or did not Kahiwalani receive, by way of advancement, during the lifetime of Hakau, a share of her property in lieu of the share he would have been by law entitled to, on the death of Hakau, intestate ? If he did so receive any such advancement, the *onus* of proving that fact, and of showing what property he did receive, rests upon the parties who now oppose the claim made by his administrator. We think the position taken by the administrator is correct, viz: that, if Kahiwalani was not so advanced in fact, in the lifetime of Hakau, his general statement before the Court of Probate, that " he did not claim any part of her property, because he had received his share before her death," cannot be regarded as conclusive, so as to bar or defeat the rights of others, for instance, his wife's right of dower in any real estate to which he became entitled on the death of Hakau, and the right of his creditors to have whatever property he inherited applied to the payment of his debts, in the absence of other property belonging to his estate, of an amount sufficient to meet their claim.

We are aware that the admission by Kahiwalani in the Court of Probate, that he had received his share in the lifetime of Hakau, comes within the rules applicable to what are usually denominated *solemn admissions;* but his statement was made under circumstances which rendered the fact as to whether he had been advanced or not, merely a collateral matter. The main facts necessary to be proved, on the application of Samuel Kaanaana for letters of administration, were the death of Hakau, and that she died intestate. To our minds the voluntary statement of Kahiwalani, that he had no claim to the property, appears to have been intended as an explanation of the somewhat unusual circumstance that, although he was the eldest of Hakau's nephews, had assumed the management and control of her property, and had the first right to administer on her estate, he waived that right in favor of his younger brother. Again, the admission of Kahiwalani, having been made at a time when the rights of other parties were liable to be seriously affected thereby, it ought not, in justice, to be held conclusive as against them, although it might have been so as against himself, particularly as between him and any other party who had been induced to act upon the faith of such admission, or been led thereby materially to change his position. It seems to

us, that to lay down a different doctrine would be extremely danger-ous, as affording an opportunity to parties, by accepting perhaps a merely nominal consideration, entirely to defeat, by collusive or fraudulent admissions, the just rights and claims of others.

Not a particle of evidence has been adduced by the other heirs, to corroborate or sustain the admission of Kahiwalani, by showing that he had ever received any part of Hakau's property, by way of ad-vancement during her lifetime; while, on the other hand, it is in proof that, subsequently to her death, he erected two houses, one of them built of stone, upon the family dwelling lot in Honolulu; used and controlled her property generally, as if it was his own, in one instance pledged the title deeds of a portion of the real estate, as security for a loan of money, and repeatedly held himself out to others as being entitled to a part, if not the whole, of Hakau's property. It appears, too, that Hakau died in the month of December, 1853, while the ap-plication for administration on her estate was not made until the month of January, 1855, and during this interval all the other heirs silently acquiesced, even after one of them had received letters of adminis-tration, in Kahiwalani treating the property as his own. The admin-istrator has further introduced evidence tending to show that, at the time Kahiwalani made the admission relied upon, he was indebted to other parties, to an amount far exceeding his ability to pay, unless he was entitled to a share of the property of Hakau. This circumstance, together with others in the case, coerce us into the belief that the admission was fraudulent.

After carefully weighing all the evidence adduced by the adminis-trator of Kahiwalani, together with the absence of any proof on the other side, beyond his own declaration, that he had ever received or accepted anything whatever, by way of advancement, during the life-time of Hakau, we are of opinion that the claim of his administrator must be sustained. Upon the death of Hakau intestate, the interest of Kahiwalani in her property, which was previously a mere expect-ancy, ripened immediately into a vested interest, and as such was liable to his wife's right of dower, which could not be defeated by his admission. But we regard that admission as so far conclusive against him, that before his administrator can be allowed to apply any part of Hakau's property to the payment of Kahiwalani's debts, he must first show that without this fund the estate of Kahiwalani is insufficient to meet the claims coming against it, after the other assets have all been exhausted.

The decision below is over-ruled.

CHIEF JUSTICE LEE concurred.

Mr. Marsh for estate of Kahiwalani.

Mr. Chamberlain for Samuel Kaanaana *et als.*