# SUPREME COURT.

## IN BANCO.

### JULY TERM—1877.

*Judd and Mc Cully, J.J.*

Su Ping Ying *vs.* W. C. Parke, Administrator of the Estate of Charles Kanaina, Deceased.

#### ON QUESTION RESERVED.

In order to entitle a person lawfully to practice as a physician or surgeon for compensation, he must have a certificate of approval from the Board of Health and a license from the Minister of Interior. The plaintiff had a license, but no certificate;

Held, not sufficient. Plaintiff cannot recover fees charged for medical attendance on defendant's deceased intestate, as the statute is not for the purposes of revenue, no fee for license or certificate being chargeable, and the practicing of medicine for compensation without license and certificate being prohibited and punishable.

The opinion of the Court was delivered by McCully, J.

The matter before the Court is a question reserved as stated in the following certificate :

"This is to certify that on the 5th day of July, 1877, this case came on to be heard, and a jury empanneled to try the issue, and the plaintiff offered in evidence a Physician's License dated December 1st, 1870, signed by the then Minister

2

of Interior and admitted that he had never received a Certificate of Approval from the Board of Health and produced none, and the defendant, by his counsel, objected to the introduction of the said license because not sufficient without the said "Certificate of Approval," and because the same was altered by an erasure on its face, and the Court reserved its opinion on the said question for further consideration by the Court *in banco* and admitted the testimony, whereupon it was agreed by both parties that the plaintiff might have judgment for $100, if the Court on the question reserved should be of the opinion that the plaintiff was entitled to recover, otherwise he should take nothing.

"Now, therefore, I do hereby certify this question and all the papers in the cause to the Supreme Court *in banco.*

"Witness my hand this 7th day of July, A. D. 1877.

"(Signed)          A. FRANCIS JUDD,

"Justice Supreme Court, presiding."

By the papers referred to, it appears that the plaintiff is a Chinese doctor and the case is assumpsit on a bill for medical attendance on the defendant's decedent and also for medicines. It does not appear whether the medicines were sold as merchandise or charged as administered in the course of medical practice, but the admissions of counsel and the agreement for the plaintiff in the matter of the physician's license, limit the question to the right of recovery for medical attendance as affected by the possession or the want of a valid license to practice medicine in this kingdom.

The law requiring a license is the 47th Section of the 55th Chapter of the Penal Code, which re-enacted, July 1st, 1870, what was the the 19th Section of the Civil Code with the incorporation of an amendment passed in 1867, and is as follows :

"It shall not be lawful for any person to practice in this Kingdom as a physician or surgeon, for compensation or

Su Ping Ying *v.* W. C. Parke, Administrator Estate of Chas. Kanaina.

reward, unless he shall have first presented to the Board of Health or to such examiners as said Board may appoint for that purpose, satisfactory evidence of his professional qualifications and good moral character, and obtained a certificate of approval from said Board, and a license from the Minister of the Interior. Any person violating the provisions of this Section shall, upon conviction thereof, be liable to a penalty of one hundred dollars for each offense."

It will be seen that one who would lawfully practice as a physician or surgeon for compensation or reward must first procure both a certificate of approval from the Board of Health and a license from the Minister of the Interior. The plaintiff had not obtained the former; was his license alone valid and sufficient? The plaintiff's counsel admits that it was not, and this is our opinion. It will be seen by examining the Section, 279, in its place in the Civil Code that it comes under a series of sections providing for a Board of Public Health and defining its powers and duties, which are extensive and responsible. It is brought into the compiled Penal Code because there is a penalty, and included in the Chapter containing the various licenses which the Minister of the Interior may issue with the penalties attached for exercising without license the certain kinds of business made by statute to require license. But it is the fair inference from the statute that the license is intended to be granted only to those who have first obtained the certificate of approval from the Board, for it is given without payment of fee; and the examination by the Board, of which two members must be " duly authorized medical practitioners," or by such other professional examiners, as they may appoint, must show satisfactory evidence of professional qualifications and of good character, before according the candidate its approval of fitness to offer himself to the public as physician or surgeon, is in its nature the more important preliminary to legalize medical practice.

The simple grant of license by the Minister cannot there-

fore satisfy the requirements of the law which demands competent skill. It would not be more illegal to practice on the certificate of the Board without license obtained. In either case such practitioner would be liable to the penalty of the law.

The question before the Court is now how far a private party, who has employed a physician not legally authorized to practice for compensation, can set up the want of certificate and license in defense of a suit for medical fees.

Counsel for the plaintiff in argument at the hearing *in banco* conceded that if the Court should hold that the plaintiff having a-license not based on a certificate of approval from the Board of Health, was not a legal practitioner he could not recover his bill, and counsel for the defendant who is the Attorney General, held in argument farther, that in all cases where the statute requires a business to be carried on under a license the want of one may be pleaded in defence of actions of assumpsit —for example, a merchant could not recover for goods sold if it appeared that he had no license to vend goods wholesale or retail as might be required in the case. This is a broad proposition and of grave consequences—and in determining and defining the law which controls the case at bar we are compelled to consider the application of the principle in other cases, limiting it strictly to where it belongs.

The principle is undeniable that where the law imposes a penalty for making a contract the contract is illegal, is prohibited and cannot be enforced—Benjamin on Sales, under the caption "Contracts, Illegal by Statute," has gathered together a series of cases which afford us authorities for the determination of the questions involved. The author points out in Section 531, that the first question is whether on the true construction of the statute the contract has really been prohibited, in determining which point much weight has been given to a distinction held to exist between two classes of statutes, those passed merely for revenue purposes and those

which have in contemplation wholly or in part the protection of the public or the promotion of some object of public policy. As in our case no fee is charged for the certificate or license the penalty is in no part for securing revenue, and it is equally clear that the purpose of it is for an object of public policy, namely the protection of the public in matters of life and health.

In 1836 in Cope *vs.* Rowlands, 2 M. & W. 149, it was held that a City of London broker could not maintain an action for his commission in buying and selling stock unless licensed under the Act, which provides that for acting as broker without license the persons shall forfeit £25 "for every such offense," on the ground that beyond the purpose of revenue to the city from license fees the benefit and security of the public formed *one* object of the statute.

In 1845, on the other hand, in Smith *vs.* Mowhood, 14 M. & W. 463, the defense was, the goods being tobacco, the plaintiff had not complied with the law requiring him to have his name painted on the house in which he carried on his business, under a penalty of £200, but it was held that the action could be maintained because the object of the law was not to vitiate the contract but only to impose a penalty on the party offending for the purpose of the revenue, and it was pointed out as a controlling circumstance that there was not here a penalty for each offense, thus prohibiting each sale, but a certain penalty for carrying on the trade, however many sales have been made.

In Miller *vs.* Post, 1 Allen, 434, the statute requiring the cans in which milk was sold at wholesale to be sealed under a certain penalty for every can sold unsealed, the plaintiff could not maintain his action for the price of milk sold in unsealed cans.

Consistently with the foregoing distinction it was held in Larned *vs.* Andrews, 106 Mass., 435, that the neglect of a wholesale dealer to pay his license was not a defense to in-

validate sales of goods during the period of his default, or prevent the recovery of the price of the goods sold.

On the principles elicited in these cases it is apparent that the plaintiff here cannot maintain his action, for this is not a revenue statute, no charge being made for certificate. and license, and there is a specific penalty imposed for each offense, which is therefore intended to prohibit the transaction.

Judgment for the defendant.

E. Preston for the plaintiff.

Hon. A. S. Hartwell for the defendant.