WICK REALTY, INC., a Hawaii corporation, Plaintiff-Appellee, *v.* NAPILI SANDS MAUI CORP., a Hawaii corporation, Defendant-Appellant

NO. 6807

DECEMBER 9, 1980

HAYASHI, C.J., PADGETT, J. AND CIRCUIT
JUDGE CHUN IN PLACE OF
ASSOCIATE JUDGE BURNS, DISQUALIFIED

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment entered after a jury-waived trial dismissing appellant's counterclaim and upholding appellee's complaint. Two issues are presented: First, whether the court below erred in entering findings of fact 14, 15 and 19 and second, whether the court below erred in concluding that even though Allison, a salesman employed by appellee, agreed to split his commission with Parsons, an architect who was not licensed as a real estate broker or salesman, appellee could nevertheless collect the real estate commission agreed to, which was in the form of a note signed by the appellant. We hold there was no error and accordingly, affirm.

Francis Ruxton Schuh and his wife are the owners of Appellant Napili Sands Maui Corp. Schuh and Ceejay Parsons were old friends; Parsons was an architect on whose advice Schuh had relied for many years. At the suggestion of Parsons, Schuh and Parsons flew to Kaanapali, Maui on February 1, 1973 and there met Joe Allison, a licensed real estate salesman employed by Appellee Wick Realty, Inc. Allison had obtained an open listing from Erik Jacobsen for the Napili Terrace Apartments. The three went from Kaanapali to Napili, looked at the premises in question, returned to Lahaina, had lunch during which there was a discussion of the possible transaction and then Schuh and Parsons returned to Honolulu. According to Schuh, on the flight back, he asked Parsons to do certain investigative work in connection with the project and agreed to cancel an indebtedness of $1,100 which Parsons owed to him in return therefor. On February 21, 1973, Schuh submitted an offer for the Napili Terrace premises through appellee to Jacobsen. On March 1, 1973, an amended offer was submitted which was accepted. That offer provided that Schuh would pay appellee a commission of $70,000, $17,500 of which was to be paid at the close of escrow and the balance of $52,500 on or before January 15, 1974 or the completion of the sale of all condominium units which ever was earlier.

Subsequently, Schuh negotiated with Jacobsen some amelioration in the terms of sale. The transaction eventually closed, appellee received the $17,500 and Schuh gave appellee a note for the balance. The note was not paid when due and appellant then gave to appellee a note for the balance of $52,500. When it was not paid when due, appellee filed suit. Appellant denied liability and counterclaimed for the monies already paid upon the grounds that Allison had secretly agreed to split his commission with Parsons who was not a licensed real estate person in violation of State law. The case was tried, jury-waived, and judgment was entered in favor of the appellee and against the appellant.

Appellant complains that the court below erred in making

findings of fact 14, 15 and 19. Those findings read as follows:

14. Parsons did not give Schuh any special or expert advice and counsel about the Property prior to the time Schuh decided to purchase the Property.

15. Schuh did not materially rely on Parsons' advice and counsel in making his decision to purchase the Property. Schuh's decision to purchase the Property was made independently of any advice and counsel which Parsons may have given him concerning the Property and its acquisition.

19. Allison's agreement to pay a finder's fee to Parsons had no material, adverse or detrimental effect upon Parsons' performance of services for Schuh.

As we have recently said:

It is well-settled law that findings of fact will not be set aside unless they are clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. HRCP Rule 52(a); *Lennen & Newell v. Clark Enterprises*, 51 Haw. 233, 456 P.2d 231 (1969); *Klein, Inc. v. Hotel Kaimana*, 51 Haw. 268, 457 P.2d 210 (1969); *Haiku Plantations v. Lono*, 1 Haw. 263, 618 P.2d 312 (1980). Those findings will not be set aside unless we are "driven irrefragably to the conclusion that all objective appraisals of the evidence would result in a different finding." *Low v. Honolulu Rapid Transit*, 50 Haw. 582, 445 P.2d 372 (1968); *American Security Bank v. Read*, 1 Haw. App. 161, 616 P.2d 237 (1980).

*Suesz v. St. Louis-Chaminade Educational Center*, 1 Haw. App. 415, 619 P.2d 1104 (1980). Parsons died some time in 1975, prior to the filing of suit and hence his version of the events in dispute was not available to the court below. Taking the testimony of the various witnesses and the exhibits as a whole, we are not driven irrefragably to the conclusion that the court below erred. As one example among many, the court found that Schuh did not materially rely on Parsons' advice and counsel in making his offer to purchase the property. Schuh testified that his arrangement with Parsons for his investigation of the project was made on the return flight from Maui on February 1, 1973 and that:

A. Between the time we looked at the property and the time when we did the first DROA, Mr. Parsons, I presumed, was doing his work. And he called me and I says, "How's the project? Is there any hold on it?"

He says, "No, it's beautiful. Not a thing wrong with it. Baby, it's a sweetheart."

Tr. at 181. On the other hand, Schuh also testified:

Q. Did he ever submit any written reports to you with regard to the research that he was to do on the project?

A. No sir. We worked everyday from the first DROA.

Q. All right. So it was — I understand then, your personal contact with him orally that you gathered the information necessary and relied upon his oral representations as opposed to any formal written reports submitted to you by Mr. Parsons?

A. That is correct.

Tr. at 219.

Clearly, this latter testimony supported the finding alluded to. We find no error in the entry of the findings of fact complained of.

Appellant's second contention involves a matter of law. The court below found that Allison, prior to the acceptance of the contract by Jacobsen on March 1, 1973, entered into a fee-splitting arrangement with Parsons whereby Allison eventually paid Parsons the sum of $1,250. Appellant contends that this fee-splitting arrangement violated § 467-14(14) (now §§ 13) of the *Hawaii Revised Statutes* (HRS) and that therefore, appellee forfeited its right to any fee and that appellant should recover the $17,500 already paid. Under the findings of fact below, Allison's arrangement with Parsons was clearly contrary to the statute.

According to Schuh, he first learned of this arrangement after Parsons' death sometime in early 1976. According to Huddleston, appellee's officers first learned of this arrangement from Schuh in the middle of 1976. Allison, of course, denied that there was such an arrangement. It is therefore clear that this is not a case in which the appellee authorized or

participated in any fee-splitting arrangement. What happened was that Allison as a salesman received a portion of appellee's fee and Allison, in turn, paid a portion of what he received to Parsons. The court below, however, concluded that there had been an illegal payment by the seller's broker, *i.e.* the appellee, but that did not constitute a defense or a basis of a counterclaim in this action.

We are, therefore, faced with the always vexatious question of whether there is a private right of action accruing from the violation of that statute in question. The pertinent portion of § 467-14(14), HRS is as follows:

> The real estate commission may revoke any license issued hereunder, or suspend the right of the licensee to use the license, for any of the following causes:
>
> . . . .
>
> (14) Splitting fees with or otherwise compensating others not licensed hereunder for referring business; . . .

Appellant has cited two cases involving New York law in support of its proposition that in circumstances such as these, a real estate broker cannot collect his fee and must pay back the portion of the fee he has collected. The first, *Kennedy v. Huntington Hartford*, 31 A.D.2d 616, 295 N.Y.S.2d 651 (1968), refers to a New York statute which prohibits a real estate broker from paying a portion of his fee to someone else. Our statute does not do that.

Our statute provides that the Real Estate Commission *may* suspend the license of one who pays a portion of his fee to an unlicensed person. Thus, it is not a prohibitory statute and the provisions of § 1-6, HRS, making the doing of an act in contravention of a prohibitory statute void are not applicable. Moreover, even if it was a prohibitory statute, the act prohibited and thus void, would be the fee-splitting, not the commission arrangement between appellant and appellee.

The other case involving a New York statute is a federal case, *Meltzer v. Crescent Leasehold, Ltd.*, 315 F.Supp. 142 (S.D.N.Y. 1970), but there, unlike our case, the statute contained a prohibition against the bringing of an action for such commissions.

Appellant also cites a Florida case, *Hanks v. Hamilton*, 339 So.2d 1122 (1976), but in that case, the suit was brought by the unlicensed person.

The Florida statute was, like our statute, one which gave the Real Estate Commission power to suspend a license if there was fee-splitting. Had the suit been one by a licensed real estate person who had split his fee with another to collect from the seller or buyers, the case would be in point. Under the facts, it is not.

As has been said,

> The legislative intent to grant or withhold a private right of action for the violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to remedied, and the purpose the statute was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability.

73 Am. Jur.2d *Statutes* § 432. The courts have struggled long and hard with this problem of statutory construction. *See,* for example, *Keaukaha-Panaewa Community Ass'n. v. Hawaiian Homes Commission,* 588 F.2d 1216 (9th Cir. 1978) where the court stated:

> Although the Court carefully stated that the *expressio unius* principle would "yield to clear contrary evidence of legislative intent," *id.* at 458, 94 S.Ct. at 693, *Amtrak* clearly indicates that in cases where a statute provides only for a public or very narrow private cause of action, there is at least a rebuttable presumption that the legislature did not intend to grant a general, private enforcement cause of action.

588 F.2d at 1221. A case much in point is *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525 (1976), where the court held that the fact that architectural services were rendered by an architect whose license had lapsed, did not

per se bar recovery for those services absent a showing of legislative intent to prohibit such a recovery. *See,* also, *Whitlow v. Jennings,* 40 Haw. 523 (1954).

Section 467-14, HRS originated with Act 140, § 11 of the Session Laws of 1933. Nothing in the legislative history of that Act that we have found indicates any intention to confer any private right of action under that section or to bar a claim for services such as in the present case. The injunction against fee-splitting was added by § 5 of Act 77 of the Session Laws of 1951. Standing Committee Report 358 of the Hawaii Senate appearing in the 1951 Senate Journal at 843, states:

> Splitting of fees or otherwise compensating others who are not licensed, . . . are declared to be additional causes for the revocation or the suspension of the use of a license by the Bill.

Language of the same effect appears in Standing Committee Report 594 of the House of Representatives for that year, appearing in the 1951 House Journal at 551. Again, nothing indicates an intention to create a private cause of action or a bar.

Thus, the act in question is not in the terms of a general prohibition but in the terms of giving the Real Estate Licensing Commission the right, in its discretion, to suspend a real estate person's license for engaging in the forbidden act. Based on the legislative history that we have found and the form of the act as well as the general principle *inclusio unius, exclusio alterius,* we conclude that neither private right of action for recovery of payments already made nor a prohibition of recovery for valuable services rendered was intended by the legislature in passing the statute in question. Therefore, the court below correctly denied appellant's counterclaim and granted judgment to appellee upon its claim for real estate commissions.

Affirmed.

*Jerry A. Ruthruff (Brian D. Sugimoto* with him on the briefs, *Chanin & Ruthruff* of counsel) for appellant.

*Eric G. Romanchak (Romanchak & McNish* of counsel) for appellee.