In re KONA JOINT VENTURE I, LTD., Debtor.

KONA JOINT VENTURE I, LTD., By and Through its trustee, Robert O. LIPPI, Plaintiffs,

v.

James COVELLA, Mountain Management, Inc., dba Pacific Operations and Development Co., Executive Suite Secretarial Services, David Harrington, Kona Gardens, Inc., Ka Pouhana, Inc., Elisabeth Covella, Linda Chock, and Gregory Worrel, Defendants.

Bankruptcy No. 85–00185.
Adv. No. 87–0179.

United States Bankruptcy Court, D. Hawaii.

July 5, 1988.

Michael Yoshida, Honolulu, Hawaii, for trustee/plaintiffs.

Steven B. Jacobson, Honolulu, Hawaii, for defendants Mountain Management and Covella.

FINDINGS OF FACT AND CONCLU-SIONS OF LAW RE: MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMA-RY JUDGMENT

JON J. CHINEN, Bankruptcy Judge.

On December 11, 1987, the trustee, Robert O. Lippi, ("Trustee") filed a Complaint against James Covella ("Covella"), Mountain Management, Inc., dba Pacific Operations and Development Co. ("Mountain Management"), Executive Suite Secretarial Services, David Harrington, Kona Gardens Inc., Ka Pouhana, Inc., Elizabeth Covella, Linda Chock and Gregory Worrel. The Complaint alleged four counts.

On March 24, 1988, the Trustee filed his Motion for Partial Summary Judgment against Mountain Management on Count I of the Complaint, which is entitled "Recession and Restitution", wherein he seeks the return of real estate commission paid. On March 28, 1988, Mountain Management and Covella filed a Motion for Judgment on the Pleadings and/or Summary Judgment on this same count.

A hearing was held on April 11, 1988, at which time Michael A. Yoshida, Esq. appeared for Trustee/Plaintiffs and Steven B. Jacobson, Esq. appeared for Defendants Mountain Management and Covella. At the conclusion of the hearing, the Court took the matter under advisement.

Based on the records and files herein, the memoranda submitted and the arguments of counsel, the Court issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Kona Joint Venture I, Ltd., ("Debtor") is a Texas limited partnership which was formed to purchase and operate the Keauhou Beach Hotel situated in Keauhou–Kona, Hawaii.

2. In August, 1973, Debtor purchased the Keauhou Beach Hotel for $12,750,-000.00 from Ho'omahele, Ltd., a Hawaii limited partnership. In conjunction with the Hotel purchase, Debtor paid a real estate commission of $63,750.00 to Mountain Management by way of a check dated September 2, 1983.

3. The escrow which handled the closing of the sale of the Keauhou Beach Hotel was Title Guaranty Escrow Services, Inc., an escrow company situated in Hawaii. The closing of the sale of the Keauhou Beach Hotel and the recordation of the conveyance documents occurred in Hawaii. The seller was a Hawaii limited partnership.

4. Mountain Management acted as a real estate broker in the purchase of the Keauhou Beach Hotel by Debtor.

5. The principal of Mountain Management at the time of sale of the Keauhou Beach Hotel was Covella, who did not have a Hawaii real estate broker's license, although he was licensed in California. In fact, at the time of the sale of the Keauhou Beach Hotel, no one employed by Mountain Management was a licensed broker in Hawaii. Trustee thus argues that Debtor has the right to rescind the commission agreement and receive restitution of the $63,-750.00 paid.

7. On the other hand, Mountain Management and Covella claim that, under Hawaii's law, an unlicensed real estate broker who has earned his commission honestly need not refund his commission.

8. To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so considered.

## CONCLUSIONS OF LAW

1. Hawaii Revise Statutes ("HRS") § 467-7 (1985) provides that:

No person within the purview of this chapter shall act as a real estate broker or real estate salesman, or shall advertise, or assume to act as a real estate broker or real estate salesman without a license previously obtained under and in compliance with this chapter and the rules and regulations of the Real Estate Commission.

2. It is generally held that unlicensed brokers are not entitled to a broker's commission. *See e.g. Anderson v. Republic National Life Insurance Company*, 623

S.W.2d 162 (Tex.Ct.App.1981); *Sorice v. Dubois,* 25 A.D.2d 521, 267 N.Y.S.2d 227 (1966); *Folsom v. Callen,* 126 Ind.App. 201, 131 N.E.2d 328 (1956).

3. HRS § 467–7 is designed to protect the public from unfit and incompetent practitioners. 1933 Hawaii Senate Journal, at 803; 1933 Hawaii House Journal, at 1213.

4. HRS § 467–7 is enforced by HRS § 467–26, which states:

Any person violating this chapter shall be fined not more than $1,000 for each violation.

5. Trustee contends that H.R.S. § 467–7 should also be used as the basis for judicial creation of an implied defense to claims for commissions by unlicensed persons, as well as creation of an implied cause of action for recovery of such commissions once paid.

6. In *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 127, 551 P.2d 525, 530 (1976), (*"Wilson"*), the Hawaii Supreme Court quoted with approval Professor Corbin in rejecting the argument that HRS § 464–2 (prohibiting unlicensed persons from practicing architecture) created an implied defense to fee collection actions.

"It is far from correct to say that an illegal bargain is necessarily 'void,' or that the law will grant no remedy and will always leave the parties to such a bargain where it finds them.... Before granting or refusing a remedy, the courts have always considered the degree by the offense, the extent of public harm that may be involved, and the moral quality of the conduct of the parties in the light of the prevailing mores and standards of the community." 6A Corbin on Contracts § 1534 p. 816 (1962).

7. And, the Restatement of Contracts, § 600, likewise indicates that under certain circumstances an illegal contract may be enforced by the courts:

"If neither the consideration for a promise nor the performance of the promise in an illegal bargain involves serious moral turpitude, and the bargain is not prohibited by statute, it is enforceable unless the plaintiff's case requires proof of facts showing the illegality, or they are pleaded by the defendant, and

even in that event recovery may be allowed of anything that has been transferred under the bargain, or its fair value, if necessary to prevent a harsh forfeiture." (p. 1115) (emphasis added). *Wilson* at 127, 551 P.2d 525.

8. Trustee argues that HRS § 467–7 is to protect the public from fraud and incompetence. However, as noted in *Wilson,*

[E]ven in these cases enforcement of the wrongdoer's bargains is not always denied him. The statute may be clearly for protection against fraud and incompetence; but in very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harmless, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. Although many courts yearn for a mechanically applicable rule, they have not made one in the present instance. *Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants.*

It must be remembered that in most cases the statute itself does not require these forfeitures. It fixes its own penalties, usually fine or imprisonment of minor character with a degree of discretion in the court. *The added penalty of non-enforceability of bargains is a judicial creation. In most cases, it is wise to apply it; but when it causes great and disproportionate hardship its application may be avoided....* 6A Corbin on Contracts § 1512 pp. 712–714 (1962).

*Wilson* at 128, 551 P.2d 525. (Emphasis in original).

9. The Hawaii Supreme Court in *Wilson* noted that legislative intent is dispositive.

[W]hat ultimately must be ascertained is legislative intent. *Harris v. Runnels,* 53 U.S. (12 How.) 79 [13 L.Ed. 901] (1851);

Restatement of Contracts § 580, Comment (a). We agree with the court in Rosasco that where a statute is silent with respect to the enforceability of a contract whose performance is malum prohibitum, the legislature could not have intended unenforceability where a forfeiture, wholly out of proportion to the requirements of public policy or appropriate individual punishment, would result and redound solely to the benefit of the defendant.

*Wilson* at 129, 551 P.2d 525.

10. In *Wilson*, the court also noted that since in another professional licensing situation the legislature has explicitly provided for nonenforceability of contracts increases the possibility that, if the legislature had intended unenforceability here, it would have expressed such an intent.

*Wilson* at 132, 551 P.2d 525.

11. There is nothing in the legislative history of HRS § 467-7, enacted as Act 140, § 6, during the 1933 Legislature's Regular Session, indicating that HRS § 467-7 was intended to create defenses or claims relating to fees. The legislative committee reports indicate that the purpose of the legislature was to "greatly minimize fraudulent and unscrupulous transactions in real estate," by requiring each broker to show "a good reputation for honesty, truthfulness and fair dealing." 1933 Senate Journal, at 803; 1933 House Journal, at 1213.

12. By 1933, legislatures of other states had already enacted licensing statutes expressly prohibiting unlicensed real estate brokers from collecting commissions. *See e.g.,* 49 McKinney's Consolidated Laws of New York, Real Property Law § 442-d (enacted 1922). The Hawaii Legislature did not do so, although such laws from other jurisdictions were available as models.

13. In the present case, Debtor is seeking a "forfeiture" of $63,750.00 of earned fees. Debtor does not allege any deficiency in the performance of Mountain Management and/or Covella. Although Mountain Management was not a licensed Hawaii real estate broker, it was a licensed California real estate broker at the time of the payment of the commission. See also *Cochran v. Ellsworth,* 126 Cal.App.2d 429, 272 P.2d 904 (1954).

14. Nothing in the legislative history indicates that the legislature intended that a violation of the statute gives rise to implied defenses against actions to collect fees, or implied rights to recover fees already paid. In fact, requests to create such implied defenses or rights appear to have been uniformly rejected in Hawaii. *See e.g. Property House, Inc. v. Kelley,* 68 Hawaii ——, 715 P.2d 805 (1986); *Wick Realty, Inc. v. Napili Sands Maui Corp.,* 1 Haw.App. 448, 620 P.2d 750 (1980).

15. Based on the above, the Court concludes that, absent any allegations of fraud and/or incompetence, Mountain Management is entitled to retain the commissions paid.

16. There being no factual disputes, the Court denies Trustee's Motion for Summary Judgment and grants summary judgment in favor of Mountain Management and Covella.

17. To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so considered.

The Court shall enter judgment accordingly.