Arthur S. KATAYAMA, Plaintiff,

v.

HELLER–WHITE HOTELS COMPANY, INC.; Ilikai Hotel Investors Limited Partnership; Mitchell T. Heller, individually and in his capacity as General Partner of Ilikai Hotel Investors Limited Partnership and in his capacity as President of Heller–White Hawaii Corporation, Defendants.

Civ. No. 87–0672.

United States District Court, D. Hawaii.

July 25, 1988.

---

Ikazaki, Devens, Lo, Youth & Nakano, Paul Devens, Stanley Ching, Honolulu, Hawaii, for plaintiff.

Dwyer Imanaka Neeley & Peterson, John Dwyer, Ronald V. Grant, Honolulu, Hawaii, for Ilikai Hotel Investors Limited Partnership, Heller–White Hawaii Corp.

## ORDER

KAY, District Judge.

### I.

Defendants have moved the court for partial summary judgment in this action by plaintiff Arthur Katayama for receipt of $1.6 million dollars as a finders fee out of a total $2.1 million dollar commission for procuring a buyer for defendants' Ilikai Hotel. Defendants allege that plaintiff acted illegally by not having the necessary real estate broker's license under Hawaii law and therefore the oral contract for plaintiff's finders fee is void and unenforceable.

Plaintiff responded by filing a cross-motion for summary judgment on the basis that defendants' affirmative defense of illegality fails because defendants haven't submitted evidence that plaintiff engaged in the real estate broker business as a whole or partial vocation.

### II.

In the spring of 1986, defendants were negotiating a joint venture for the purchase of the Ilikai Hotel with a Japanese investor, Mr. Gotoh. Mr. Gotoh's attorney was the plaintiff in this case, Arthur Katayama. The negotiations between the defendants and Mr. Gotoh ended unresolved, in part because of pending litigation between defendants and Westin Hotels, the latter being the owner of the Ilikai Hotel. The suit between defendants and Westin Hotel was subsequently settled and defendants agreed to complete the purchase of the Ilikai by March 2, 1987. Defendants thereafter sought financing through a joint venture or bank financing.

The manner in which the parties came into contact in September of 1986 is disputed. Defendants allege that plaintiff initiated the contact by "pestering" defendants' representatives and boasting about his contacts with Japanese political, industrial and other business figures and his prior real estate deals in Hawaii and elsewhere. Plaintiff, on the other hand, alleges that defendants contacted him to obtain a buyer for the Ilikai.

Plaintiff Katayama, after speaking to defendants, agreed to "seek out a potential purchaser or purchasers interested in and capable of purchasing the Ilikai" for $1.6 of a $2.1 million finders fee. Plaintiff thereafter contacted Mr. Tadashige Oku in Japan to aid plaintiff in locating a suitable purchaser.

As part of plaintiff's activities in procuring the buyer, plaintiff set up meetings, negotiated a "cap" on the proceeds defendants would realize from the sale of the Ilikai, and conveyed information regarding the sales contract to the Industrial Bank of Japan (IBJ) regarding details on the sales price, sprinkler system, necessary renovations and the purchase of fee title, and terms for management contract. Plaintiff's agent, Oku, also arranged to show the Ilikai to the prospective purchasers.

Plaintiff apparently attended and assisted in the subsequent negotiation meetings between defendants and the IBJ. Plaintiff also expedited negotiations by locating the head negotiator from the IBJ at a critical moment. Plaintiff apparently also advised defendants at various times to "hang tough" in defendants' negotiations with the IBJ.

Defendants allege that plaintiff engaged in fraudulent behavior by misleading both sides of the negotiations and that he was essentially "fired" before the deal was consummated. Defendants contend that plaintiff gave the IBJ and the defendants vastly different information regarding the Ilikai's sale price plus other critical terms. Defendants allege that plaintiff purposely misled both sides and had been providing information to the IBJ that was not authorized by the defendants but which had come from plaintiff's previous dealings with Mr. Gotoh. The IBJ was allegedly unaware of the terms which were related to plaintiff for transmittal to the IBJ. Defendants allege that the parties were induced to the negotiation table by plaintiff's representations to the IBJ that the sale price was $63–$65 million and representations to defendants that the IBJ was willing to pay in the neighborhood of $85 million. Defendants allege that after plain-

tiff's duplicity was discovered he was no longer a part of the deal and the IBJ and defendants then reached an independant agreement which was severely pressured by the March 1987 deadline. Defendants contend that they were then foreclosed from pursuing other business deals which had arisen because of plaintiff's deliberate stalling and the alleged deliberate misinformation provided to the IBJ.

After negotiations between the IBJ and defendants, the sale of the Ilikai was completed and closed for a price of $69.5 million, which was less than the $77.5 million on which the $2.1 finder's fee was allegedly based. Defendants have refused to pay plaintiff the "finder's fee" pursuant to an oral contract for $1.6 million dollars out of a total $2.1 million dollar commission.

Defendants contend that a substantial portion of plaintiff's professional time has been spent in the real estate business in Hawaii and elsewhere and that because he did not have a real estate license he could not legally act as a finder or broker between defendants and the IBJ. Defendants also argue that plaintiff was not entitled to the commission because of his duplicitous behavior and because he had been discharged before the ultimate sale.

Plaintiff concedes that he has never had a Hawaii real estate broker or salesman license, yet he believes that he is entitled to the commission pursuant to the oral contract between the parties.

### III.

Both sides rely upon the U.S. Supreme Court case of *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), for the applicable summary judgment standard. Each side asserts that the other has failed to provide evidence of an essential element of their claim, thereby mandating summary judgment in their respective favor.

Defendants assert that plaintiff has failed to show evidence that plaintiff had a valid broker's license which would entitle him to recover his fee. Defendants claim that the existence of a real estate broker's

license is an essential element to his claim of the $1.6 million dollars.

Plaintiff asserts that defendants' claim that § 467–7 prohibits plaintiff from recovering his fee is an affirmative defense and therefore defendants must provide evidence of all material elements and that defendants have failed to show that plaintiff was a real estate broker as a whole or part-time vocation.

Hawaii Rev.Stat. Chapter 467 regulates "Real Estate Brokers and Salesmen" in Hawaii. Section 467–1 provides definitions as to who is considered a broker or salesman for the purposes of requiring a license under this chapter,

> "Real estate broker" means and includes any person ... who for compensation or a valuable consideration, sells or offers to sell, buys or offers to buy, or *negotiates the purchase or sale ... or solicits for prospective purchasers, as a whole or partial vocation....*

Hawaii Rev.Stat. § 467–1 (emphasis added). Plaintiff asserts that the licensing provision of § 467–7 is inapplicable because defendants cannot show that plaintiff was indeed a real estate broker or real estate salesman within the meaning of § 467–1. Plaintiff contends that he has not engaged in the practice of a real estate broker as "a whole or partial vocation." Plaintiff asserts that 30% of his time is spent in the practice of law and 70% is spent playing golf. However, defendants assert that in seeking a commission of $1.6 million in compensation for soliciting and procuring a buyer for the Ilikai Hotel indicates that he acted as a broker. Defendants further contend that plaintiff was actively engaged in the real estate brokerage business as a vocation and cite plaintiff's deposition testimony which indicates that plaintiff may have been involved in other Hawaii real estate deals. Therefore, whether plaintiff was acting as a real estate broker as a full or part time vocation is an issue of fact and as such will defeat both plaintiff's and defendants' cross motions for summary judgment.

Plaintiff also disputes that his actions are those of a real estate broker or sales-

man which would be regulated by Chapter 467. Instead, plaintiff argues that he is a "finder" not a broker. However, under Hawaii law, this is not a material distinction. Plaintiff's actions as a finder or middleman are also regulated under Chapter 467. *Property House, Inc. v. Kelley*, 67 Haw. ——, 715 P.2d 805 (1986). The court finds that the undisputed facts show that plaintiff Katayama acted in a manner which subjected him to the requirements of Chapter 467 in that he solicited the IBJ as buyer of the Ilikai. It is a question of fact whether plaintiff took part in the negotiation of the sale between the IBJ and defendants.

Haw.Rev.Stat. § 467–7 requires real estate brokers and salesmen, and finders and middlemen under *Property House*, to previously have obtained a real estate license,

> No person within the purview of this chapter shall act as real estate broker or real estate salesman, or shall advertise, or assume to act as a real estate broker or real estate salesman without a license *previously obtained* under and in compliance with this chapter and the rules and regulations of the real estate commission. (emphasis added).

Defendants assert that the definitions section of § 467–1 and § 467–7, above, read together forbid unlicensed solicitation of prospective purchasers of real estate.

Alternatively, plaintiff asserts that if his activities are found to be governed by Chapter 467, that his failure to have a real estate brokers license is not fatal to recovery of his "finder's fee." Defendants assert that § 467–7 is a prohibitory law when construed in conjunction with Hawaii Rev. Stat. § 1–6 which provides that "whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." This section has been construed in the Hawaii courts as "one which forbids all actions which disturb the public repose, or injury to private rights, ... or certain actions in relation to the transmission of estates, the capacity of persons or their objects." *Parke v. Parke*, 25 Haw. 397, 403 (1920) (marriage without license void as unlawful).

Defendants assert that § 467–7 and § 1–6 prohibits recovery of a fee under a brokerage contract where the broker did not have a license because the contract would be void and unenforceable. *See American West Motel Brokers, Inc. v. Wu*, 697 P.2d 34, 36 (Colo.1985) (recovery of real estate commission prohibited without a license; using analogous real estate licensing statutes, the state court found the sale of the business without a license was against public policy and denied recovery of broker's fees).

The Hawaii Intermediate Court of Appeals has considered the effect of § 1–6 on a similar Hawaii real estate statute which prohibits fee-splitting in *Wick Realty, Inc. v. Napili Sands Maui Corp.*, 1 Haw.App. 448, 620 P.2d 750 (1980). In *Wick*, the court found that the statute that prohibited fee-splitting contained a provision that the Real Estate commission could suspend the license of the fee-splitter and therefore was not a prohibitory statute. The court further found that the statute would not support a private right of action for recovery of the sales commission paid or act as a bar for a claim for services. *Id.*, 1 Haw.App at 454, 620 P.2d 750.

The real estate broker licensing statute prohibits acting as a real estate broker without first obtaining a license. There is no penalty that appears on the face of the statute. The defendants argue that the statute is therefore prohibitory in nature. However, plaintiff argues that § 467–26 provides a sufficient remedy for violation of the statute by providing for a fine,

> [a]ny person violating this chapter [Chapter 467] shall be fined not more than $1,000.00 for each violation.

Further, plaintiff argues that even if the statute is prohibitory, the sanction against recovering his fee denies him the lawful benefit of his bargain. In support, plaintiff cites *Wilson v. Kealakekua Ranch, Ltd.*, 57 Haw. 124, 128, 551 P.2d 525 (1976). *Wilson* involved an architect who had not renewed his license and yet had subsequently rendered services. The *Wilson* court in determining whether the architect could recover his fees, distinguished be-

tween statutes enacted for the purposes of revenue and statutes enacted for the protection of the public against incompetence and fraud. The *Wilson* court stated,

> Even in [cases where the statute is for the protection of the public against fraud and incompetence], enforcement of the wrongdoer's bargain is not always denied him. The statute may be clearly for protection against fraud and incompetence; but in very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harmless, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. Although many courts yearn for a mechanically applicable rule, they have not made one in the present instance. Justice requires that the penalty should fit the crime; and justice and sound policy *do not always require* the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants.
>
> It must remembered that in most cases the statute itself does not require these forfeitures. It fixes its own penalties, usually fine or imprisonment of minor character with a degree of discretion in the court. *The added penalty of non-enforceability of bargains is a judicial creation. In most cases, it is wise to apply it; but when it causes great and disproportionate hardship its application may be avoided....*

*Wilson*, 57 Haw. at 128, 551 P.2d at 528, *citing* 6A Corbin on Contracts § 1512, pp. 712–714 (1962) (emphasis changed from original). The Hawaii Supreme Court in *Wilson* appears to favor non-enforceability of bargains that violate prohibitory statutes with the exception of when there is a great and disproportionate hardship.

Defendants argue under *Wilson* that renewal of a license which generates revenue is very different than the public policy reasons of protection of Hawaii's citizens against fraud and incompetence by regulating real estate brokers. In the instant case, the legislative history of the statute indicates that the licensing statute was enacted to "greatly minimize fraudulent and unscrupulous transactions in real estate." *Senate Journal*, Stand.Com.Rep. No. 208, p. 803 (1933). As such, defendants argue the result in *Wilson* is not applicable to this case because the equities are different. Plaintiff allegedly engaged in fraudulent and duplicitous behavior which effectively precluded defendants from pursuing more profitable ventures. The court finds that the allegations of plaintiff's fraudulent behavior constitute questions of fact which preclude the grant of summary judgment for either side. Moreover, there is a question of fact as to whether applying the statute's penalty of non-enforceability of the bargain would cause a great and disproportionate hardship.

Plaintiff urges this court to follow a "single occurrence" exception to the Real Estate licensing statute. Plaintiff argues that even if the court finds that he acted as a broker because of the Ilikai transaction, that it was merely a single isolated occurrence. Plaintiff urges the court to adopt the "single occurrence" exception which exempts a person from complying with the licensing laws if the brokerage transaction is a one-time occurrence. See *Sheppard v. Hulseberg*, 171 La. 659, 131 So. 840 (1930); *Brumfield v. Brumfield*, 450 So.2d 1019 (La.App.1984); *Ledford v. Faulkner*, 661 S.W.2d 475 (Ky.1983); *Stoltz v. Delaware Real Estate Com'n*, 473 A.2d 1258 (Del.Super.1984); *Roberts v. Ross*, 344 F.2d 747 (3d Cir.1965). While a few other jurisdictions have adopted this, either by statute or common law, it would be a case of first impression in Hawaii.

However, it remains a disputed question of fact as to whether plaintiff has engaged in other real estate broker activities in Hawaii which would indicate that plaintiff was a broker as whole or partial vocation. Therefore, this court need not decide whether the Hawaii legislature contemplated a "single occurrence" exception to the real estate broker licensing statute at this time.

### IV.

Genuine questions of material fact exist of whether plaintiff has acted as a real

estate broker in Hawaii as a "whole or partial vocation." Also, whether plaintiff made misrepresentations to the defendants or engaged in fraudulent behavior are also questions of material fact which preclude a grant of summary judgment. Accordingly, the court, having reviewed the motions, memoranda in support and in opposition thereto, the record herein, and having heard oral arguments by counsel, hereby ORDERS that defendants' motion for partial summary judgment is DENIED and that plaintiff's motion for summary judgment is DENIED.