STATE OF HAWAII, by its Attorney General, RONALD Y.
AMEMIYA, Plaintiff-Appellee, *v.* KAUAI KAI, INC., A
Hawaii Corporation, WALLACE A. DYER, Individually
and dba MAN-KOD UNIVERSAL; KENNETH C. LUM,
Defendants-Appellants, and ALFRED AKANA, Defendant

NO. 6864

APRIL 22, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

Appeal is taken from a judgment in favor of the State finding
that the State was entitled to cancellation and the recovery of past
due lease rental on the appellants' failure to comply with the terms of
the general lease agreements.

Appellants cite as error the following: (1) that notices of the
default and subsequent forfeiture and cancellation of the leases
were improper and incomplete; (2) that the cure provisions in the
event of default were unreasonable as applied to them; (3) that
appellants Dyer and Lum, both directors of Appellant Kauai Kai,
Inc., were not given proper notice in their capacity as sureties under

HRS § 171-20; and (4) that the State unreasonably withheld its consent to assignment of the leases to Western Resorts, Inc., after their cancellation.

For the reasons stated herein, we affirm the decision of the trial court.

In 1965, the State Department of Land and Natural Resources Board (Board) leased two adjoining parcels of land situated at Nawiliwili, Lihue, Kauai. Parcel S-3884 was leased to Alfred Akana on January 11, 1965; the adjoining parcel S-3942 was leased to Wallace Dyer on November 16, 1965. Both of the leases were for a term of fifty-five (55) years. Under the terms of the lease agreements, both parcels were leased to be developed for "hotel-apartment purposes and accessory uses incidental to and customarily connected within such areas." The terms of Akana's lease required construction to begin within three years and Dyer's lease required construction to begin within two years. Neither party began construction within the required times and lease rentals on both parcels became delinquent. In its meeting of June 28, 1968, the Board consented to the assignment of both the leases to Kauai Kai, Inc., and also granted the extension of the construction deadline to June 30, 1969, on the condition that Kauai Kai, Inc.: (1) furnish performance and improvement bonds and (2) pay the delinquent rentals. Wallace Dyer and Kenneth Lum were officers and directors of Kauai Kai, Inc. Larry K. S. You was a director and its project coordinator.

From 1969 to the time of this action, extensive correspondence and communications were exchanged between the Board and the appellants concerning the appellants' numerous requests for extension of the construction deadlines because of various difficulties it encountered, its continuous delinquent status with respect to the payment of the lease rentals, and its failure to maintain the performance bonds. The correspondence was either addressed to, received by and responded to by Larry K. S. You, Officer, Director, and Coordinator of Kauai Kai, Inc., 925 Bethel Street, Honolulu, Hawaii, on the stationery of the Polynesian Development Company, Inc., at the same address, Larry K. S. You, Project Coordinator; or Wallace Dyer, Polynesian Development Company, Inc., at the same address, President, Kauai Kai, Inc. On November 3, 1972, four years after the leases had been assigned to Kauai Kai, Inc., a letter to

the appellants from the Board's Kauai land agent contained the following:

> Of considerable concern to us is the fact that your accounts under both leases are in arrears in the amount of $8,400.00 and that the building requirements are five years overdue without benefit of a current extension of the construction deadline.
>
> We are certain that you are aware of the fact that either the delinquency or non-performance of the building requirement are grounds for instituting defaults and forfeiture against you. . . .

Appellants took no action.

On November 29, 1972, the Board's Kauai land agent again wrote to Kauai Kai, Inc., stating:

> We wrote you on November 3, 1972 concerning General Lease Nos. S-3884 and S-3942 at Nawiliwili, Kauai.
>
> May we again request that you please within fifteen days from the date of this letter, bring your accounts up to date and apply for an extension of the construction requirement based on current plans.
>
> We regret to advise should you not perform, that we will have no other alternative but to recommend that default and forfeiture proceedings be commenced against you.

Again, appellants took no action.

On January 12, 1973 the Board sent a notice of default to the appellants via certified mail, return receipt requested, to the effect that the appellants had ninety days with respect to the Akana lease and sixty days with respect to the Dyer lease to cure the breach by (1) the payment of past due rentals and (2) the submission of a development plan for improvements on the property. Appellants did neither, and on June 8, 1973 the Board served the appellants again by certified mail, return receipt requested, with a notice of cancellation and forfeiture of the leases. In February 1974, sometime after the forfeiture and cancellation of the leases, the attorney for appellants and a group called Western Resorts, Inc., requested the Board's consent to an assignment of the forfeited, cancelled leases to Western Resorts, Inc., which request was not granted.

This action was then brought by the State against Kauai Kai, Inc., as lessees, against Dyer and Akana as assignors of the leases to Kauai Kai, Inc., and against Dyer and Lum as sureties (appellants) to collect

the delinquent rentals in the amount of $8,778.63.

Kauai Kai, Inc., and Dyer as its president and as an individual, counter-claimed against the State alleging that the State unreasonably refused to approve an assignment of the lease from Kauai Kai, Inc., to Western Resorts, Inc. After trial, the trial judge entered judgment for the State of Hawaii and dismissed the counter-claim filed by Kauai Kai, Inc., and Dyer. Appellants appealed.[1]

Appellants' first contention is that the service of the notice of the Board's entry of default and its cancellation and forfeiture of the lease were improper and incomplete. The Board sent notice of the entry of the default addressed to the appellants via certified mail, return receipt requested. The receipt was signed by "L. You."

In the event of a default or breach in the lease of land under its jurisdiction, the manner and to whom notice of breach or default be given is governed by HRS § 171-20.[2]

Appellants argue that the State's reliance on HRCP Rule 5 for the proposition that the notice was complete upon mailing is misplaced, because no civil action had commenced at the time of the giving of the notice to bring the Hawaii Rules of Civil Procedure into play. Hence, You's denial of receipt of the notice rendered it im-

---

[1] The trial judge dismissed the claim against Akana on the ground that the State had failed to give Akana proper notice.

[2] HRS § 171-20 provides that:

*Notice of breach or default.* Except as otherwise specifically provided in this chapter, in the event of a breach or default of any term, covenant, restriction, or condition of any lease, patent, license, agreement, or other instrument heretofore or hereafter issued under this chapter, the board of land and natural resources shall deliver a written notice of the breach or default by personal service or by registered or certified mail to the party in default and to each holder of record having any security interest in the land covered by or subject to the lease, patent, license, agreement, or other instrument, making demand upon the party to cure or remedy the breach or default within sixty days from the date of receipt of the notice. Upon failure of the party to cure or remedy the breach or default within sixty days from the date of receipt of the notice, or within such additional period as the board may allow for good cause, the board may, subject to section 171-21 exercise such rights as it may have at law or as set forth in the lease, patent, license, agreement, or other instrument.

proper and incomplete. We disagree. HRS § 171-20 provides for such service by registered or certified mail. The leases in question both contain the following provision concerning notice to the lessee of default in its terms.

4. Breach.    That if the Lessee shall fail to yield or pay the aforesaid rent or any part thereof at the times and in the manner aforesaid or shall fail to observe or perform any of the covenants, restrictions or conditions herein contained . . . after written notification thereof by personal service, registered or certified mail by the Lessor to the Lessee . . . the Lessor may . . . at its option terminate this lease. . . .

Here we have notice of default and notice of cancellation, both being sent by certified mail pursuant to statute and the lease agreement. Both receipts were returned. There is extensive evidence of continuous correspondence between the appellants and the appellee over a period of time covering their transactions prior to the bringing of this lawsuit. Through the deposition You testified that since he was frequently out of the office at 925 Bethel Street, he had authorized his friends and helpers to receive mail, both regular and certified, on his behalf. At trial he testified to the contrary. Against this background, we find that the court did not err in concluding that notice of both the default and cancellation of the leases was complete and proper, notwithstanding You's bare statement to the contrary.

Appellant's next contention is that the cure provisions stated in the notice of default were impossible to achieve and, hence, unreasonable. The January 1973 notice of default provided for cure of the breach by (1) payment of past due rentals and (2) the submission of a development plan for improvements within a specified time period. Appellant contends that downzoning of the property by Kauai County prevented it from meeting the second requirement. We find this contention to be without merit in light of the following: (1) It was undisputed that the lease rentals were in arrearage for a considerable amount of time and that numerous extensions of time for payment had already been granted. (2) Failure to pay the lease rental alone was a sufficient basis to cancel the lease under HRS § 171-20, and under the terms of the lease itself. (3) Prior building plans submitted by Kauai Kai, Inc., could not be approved because the submitted designs straddled the properties.

On cross-examination of Wallace Dyer by Deputy Attorney General Watson, the following was elicited:

Q. Mr. Dyer, were the building plans, the original building plans that you mentioned were designed for the property, designed to straddle both properties?

A. Yes; the architect that did the drawings did it.

Q. Was Kauai Kai, Inc., aware that the County required the properties to be consolidated prior to a building permit being issued?

A. Well, that was left up to the architect.

Q. So in other words, you're saying that it was the architect who designed the building to straddle both of them?

A. Yes, that's correct.

Q. And the architect designed the building at your request for your benefit?

A. Yes.

Q. Were you aware that the two general leases had different expiration dates?

A. Yes.

Q. Didn't you feel that this may pose some problem as far as having the building straddle both lots?

A. Not particularly, no; I thought perhaps we could get an extension of lease later on for the shorter one.

Accordingly, the court's finding that the cure provisions were reasonable was not erroneous.

Appellants Dyer and Lum contend that notice of the default and cancellation should have been given them in the capacity as sureties; hence, without notice, the default and cancellation is ineffective. The court found that written notice duly made to Appellant Kauai Kai of the default and cancellation of the leases was constructive notice to the officers and directors, Dyer and Lum as sureties, and to Dyer as assignor.

It is undisputed that Dyer was the assignor of General Lease S-3942, and that he was the surety on the general lease, as well as president, director and major shareholder of the appellant corporation which was duly served. Furthermore, there was no evidence presented that appellants, as sureties, were "holders of a security

interest" as that term is defined in the statute[3] and in the lessee's provisions thereby entitling them to notice. In addition, a surety is held responsible to know every default of his principal. *See Schweitzer v. Fishel,* 13 Haw. 690 (1901). On the basis of the evidence before us, we cannot conclude that the court's findings were clearly erroneous. HRCP Rule 52(a); *Suesz v. St. Louis-Chaminade Education Center,* 1 Haw. App. 415, 619 P.2d 1104 (1980); *American Security Bank v. Read,* 1 Haw. App. 161, 616 P.2d 237 (1980); *Wick Realty, Inc. v. Napili Sands Maui Corp.,* 1 Haw. App. 448, 620 P.2d 750 (1980).

Appellants' final contention that the Board's refusal to consent to a further assignment of the delinquent leases was unreasonable is without merit. The Board's action on June 8, 1973, effectively cancelled the leases. Appellant's counsel's overture to the Board in February 1974 for consent to further assignment was, therefore, a nullity. That the Board had the power to reinstate the leases is of no moment if it chose not to exercise that power.

Accordingly, the judgment is affirmed.

*Edwin P. Watson,* Deputy Attorney General, for plaintiff-appellee.

*Connie Meredith (Ronald G. S. Au* on the briefs) for defendants-appellants.

---

[3] HRS § 171-1 *Definitions.* provides that:

\* \* \* \* \*

"holder of record having a security interest" is a person who is the owner or possessor of a security interest in any land covered in section 171-21 *and who has filed with the bureau of conveyances of the State and with the department a copy of the interest;* (emphasis supplied.)