881 P.2d 1255

**INLANDBOATMEN'S UNION OF THE PACIFIC, HAWAI'I REGION, MARINE DIVISION OF the INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, Movant–Appellant,**

v.

**SAUSE BROTHERS, INC., Respondent–Appellee.**

No. 15838.

Intermediate Court of Appeals of Hawai'i.

Sept. 26, 1994.

Charles K.Y. Khim, on the briefs, Honolulu, for movant-appellant.

Leonard F. Alcantara (Robert G. Frame and Marybeth King Fentriss, with him on the brief), Alcantara & Frame, Honolulu, for respondent-appellee.

Before BURNS, C.J., and HEEN and ACOBA, JJ.

ACOBA, Judge.

On May 22, 1990, the Movant–Appellant, Inlandboatmen's Union of the Pacific, Hawai'i Region, Marine Division of the International Longshoremen's and Warehousemen's Union (hereafter Union), filed a motion in circuit court pursuant to the Arbitration and Awards statute, Chapter 658 of the Hawai'i Revised Statutes (HRS), specifically HRS § 658-8 (1985), to confirm an arbitration award rendered on January 12, 1990. The award was issued following hearings on three grievances filed under a collective bargaining agreement with Respondent–Appellee–employer Sause Brothers, Inc. (hereafter Sause). The award made three "findings" [1] as follows:

1. Under Rule 11.02(C), when an employee performs harbor work on a Saturday, Sunday or holiday, he should be paid at the overtime rate for each hour actually worked or the guaranteed minimum, whichever is more.

2. Under Rule 17.02, including past practice pertinent thereto, plugging and unplugging reefers is part of "cargo work" and is compensable at overtime rates.

---

1. The "award" listed three findings, each one of which might be considered separate awards but the parties have referred to these items as "findings." As will become clear, we are principally concerned with finding number three.

3. Under Rule 10.01(A)(10), employees have the right to complete their scheduled watches in outports and be assigned work to perform during their scheduled watch while the vessel is secured to a dock or moorage unless otherwise agreed between the master and a crew member that the crew member may perform such work at another mutually agreeable time. The Employer may not terminate such scheduled sea watch to avoid paying overtime compensation.

Sause did not move to vacate, modify, or correct the arbitration award under HRS §§ 658-9 or -10 (1985).

By May 22, 1990 the time to file such a motion had passed. HRS § 658-11 (1985) provides that such a motion must be made within ten days after the award was made and served.

Sause did not move for clarification of the award by the arbitrator.

Written opposition to confirmation was not filed by Sause, although it filed written opposition to Union's request for attorney's fees, costs and interest. At the hearing on confirmation, Sause's attorney stated generally that Sause had "made the motion to vacate [the arbitration award] in [f]ederal [c]ourt under [f]ederal [s]tatute."

Hence, prior to the confirmation hearing, Sause had filed an action to vacate the award in the United States (U.S.) District Court for the District of Hawai'i. But apparently this action had been dismissed. An appeal to the U.S. Court of Appeals for the Ninth Circuit from the federal district court's dismissal was pending at the time of the confirmation hearing.[2] The court noted that Sause had spent "a lot of time investigating whether or not this award can be confirmed or not and is in fact proceeding in [f]ederal [c]ourt[.]"

Sause did not request a stay of the state court proceedings.

On September 7, 1990, the court granted Union's motion to confirm arbitration award and denied its motion for attorney's fees and interest. The order stated that:

the ... motion to confirm arbitration awards [is] GRANTED, and pursuant to Hawaii [Hawai'i] Revised Statutes, Section 658-14, the arbitration awards issued on January 12, 1990, ... made a part hereof, shall be given the full force and effect, in all respects as, and is [sic] subject to all the provisions of law relating to, a judgment in an action, ... and said arbitration awards shall be enforced as if it [sic] had been rendered in an action in the above entitled Court.

Sause did not file a notice of appeal from the order making the arbitration award a judgment.

On January 30, 1991, Union filed a motion for issuance of "an order to show cause why the Respondent Sause Bros., Inc. should not be held in civil contempt of court for failing to comply with a judgment issued ... on September 7, 1990" (hereafter contempt motion). The supporting Union affidavit stated that:

"Sause had not yet complied with [the] Court's order, and was not keeping some of the records ... necessary ... in order to comply with ... [the] order ... supposedly on the ground that the matter was on appeal to the United States District Court for the District of Hawai'i[,] [h]owever, said appeal was dismissed by ... the Ninth Circuit on November 8, 1990."

Attached to the affidavit was a Ninth Circuit Court order of dismissal granting Sause's "motion for voluntary dismissal under [Federal Rules of Appellate Procedure] 42(b)[.]"

In its opposition memorandum, Sause indicated it had paid overtime compensation for "work on Saturdays, Sundays or holidays" and for "cargo work[,]" all in compliance with findings numbers one (hereafter finding one) and two (hereafter finding two) of the arbitration award. Sause further advised that it had suspended the provision relating to overtime pay on watches, i.e., finding number three (hereafter finding three), because "implementation ... would cause SAUSE to violate federal law on manning vessels." Citing

2. We glean these matters from the record because the parties failed to provide basic documentary evidence of the federal action.

46 U.S.C. § 8104 (1988), which limits employees' hours on "watch", Sause maintained that the arbitration award "requires a crewmember to stand scheduled watches during each outport call regardless of how many work and/or watch hours the crewmember stands during the same twenty-four (24) hour period."

On May 22, 1991, the court issued an order granting Union's contempt motion, giving Sause fourteen days to comply with "[the] Court's judgment ... filed ... on September 7, 1990."

On May 31, 1991, Sause filed a motion for reconsideration. In the affidavit attached to this motion, Sause indicated that the issues regarding overtime pay on "Saturday[s], Sunday[s], and holiday[s]" and on cargo work (findings one and two in the arbitration award) were "no longer an issue" or "resolved to each of the parties [sic] satisfaction." Sause, therefore, proposed that the court enter one of three alternative orders. One of the proposals was that the "order to show cause [be] granted as to [the] Arbitrator's findings 1[ ] and 2[ ] and partially granted as to finding 3[ ] only to the extent that the Arbitrator's interpretation therein be read consistnet [sic] with 46 USC [sic] 8104 so as not to violate its provisions."

In opposition to the reconsideration motion, Union stated that Sause's "argument concerning the application of 46 U.S.C., Section 8104 was resolved against [Sause] in the [federal courts] because said argument lacks merit." The affidavit, attached to the memorandum in opposition, further stated that Sause "never specifically stated how adhering to [the] ... judgment will cause a violation of 46 U.S.C., Section 4108 [sic]."

On November 20, 1991, the court granted the motion for reconsideration, ordering that "Sause shall comply with [the Arbitrator's] findings 1, 2, and 3 to the extent that the Arbitrator's decisions can be read consistnet [sic] with 46 U.S.C. § 8104 [sic] so as not to violate the federal statute's provisions." Union noticed an appeal from this order on December 19, 1991.

## I.

### A.

First, we consider the court's order as it relates to findings one and two. Sause's position below was that it had complied with findings one and two. It said that finding one was "no longer an issue" and that finding two was "resolved to each of the parties [sic] satisfaction." In its contempt motion, Union claimed that Sause was not paying "premium pay" owed without specifying whether findings one and two were still at issue. In any event, in its attorney's affidavit, attached to the motion for reconsideration, Sause conceded that "[the] order to show cause [be] granted as to Arbitration finding 1[ ] and 2."

On appeal, the parties only address finding three. The record does not indicate any objection to granting the contempt motion as it related to findings one and two. Hence, conditioning compliance with "[the Arbitrator's] findings 1 [and] 2 ... to the extent that the Arbitrator's decision can be read consistnet [sic] with 46 U.S.C. § 8104 [sic] so as not to violate the federal statute's provisions" was erroneous. Although this plain error was not raised by Union, we "may notice a plain error not presented[,]" and do so here. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(D); HRAP Rule 31(e)(4)(A). The court shall take notice of a plain error when it is necessary to prevent a miscarriage of justice. *Chung v. Kaonohi Center Co.,* 62 Haw. 594, 603, 618 P.2d 283, 290 (1980); *Leyson v. Steuermann,* 5 Haw. App. 504, 519, 705 P.2d 37, 48 (1985). Accordingly, we hold that the court was incorrect in subjecting findings one and two to the provisions of 46 U.S.C. § 8104.

## II.

We turn then to finding three. We conclude that the motion for reconsideration as to finding three should not have been granted.

### A.

Citing *Gozum v. Am. Int'l Adjustment Co.,* 72 Haw. 41, 805 P.2d 445 (1991), Sause contends for the first time on appeal

that the court's modification of the award was a "clarification" of a judgment. Assuming *arguendo* that a judgment may be "clarified" in this manner, the short answer to Sause's contention is that *Gozum* did not involve the clarification of a judgment but a request for clarification of an arbitration award *before* judgment was rendered under HRS Chapter 658 (1985). *Id.* at 43, 805 P.2d at 446.

More importantly, Sause never requested a clarification of the award before or after judgment was rendered. Neither party raised any questions with the court about the clarity of the third finding. Nor did they express the need " 'to make [finding three] clear or intelligible.' " *AOAO of Tropicana Manor v. Jeffers,* 73 Haw. 201, 213, 830 P.2d 503, 511 (1992) (quoting *The Random House Dictionary of the English Language* 380 (2d ed.1983)). Certainly, finding three is not ambiguous so as to require a clarification of the award's terms. *See Gozum.*

## B.

◼ Next, we believe that by limiting the award "to the extent that the Arbitrator's decisions can be read consistnet [sic] with 46 U.S.C. § 8104 [sic] so as not to violate the federal statute's provisions[,]" the court modified the award in derogation of HRS Chapter 658. To "modify," is "to limit or restrict the meaning" of the matter affected. *Mer-*

*riam–Webster's Collegiate Dictionary* 748 (10th ed.1990).

◼ We note that the Hawai'i Supreme Court has "confine[d] judicial review of [arbitration awards] to the strictest possible limits." *Mars Constr. v. Tropical Enter.,* 51 Haw. 332, 335, 460 P.2d 317, 319 (1969). Consequently, "review of [arbitration] awards by the [circuit and appellate] courts [is] limited by the provisions of the arbitration statute." *Id.* at 336, 460 P.2d at 319. Hence, the circuit courts "shall grant ... an order confirming [an arbitration award] unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10." HRS § 658–8.

◼ Notably, "HRS § 658–9 provides only four specific grounds upon which an award can be vacated, while HRS § 658–10 provides only three grounds for modifying or correcting an award." *Excelsior Lodge Number One v. Eyecor, Ltd.,* 74 Haw. 210, 219–20, 847 P.2d 652, 657 (1992) (footnotes omitted). If the ground urged is not one of the specified grounds, the circuit court is "powerless to [vacate,] modify or correct [an] award" and has "no alternative but to confirm the award and to enter a judgment accordingly." *Mars,* 51 Haw. at 336, 460 P.2d at 319.

Sause's request to modify the award did not come within any "one of the specified grounds" in HRS §§ 658–9 or –10 and therefore the circuit court had no power to modify the award.[3] The modification of the arbitra-

---

**3.** Hawai'i Revised Statute (HRS) § 658–9 (1985) and HRS § 658–10 (1985) state:

**§ 658–9 Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
(1) Where the award was procured by corruption, fraud, or undue means;
(2) Where there was evident partiality or corruption in the arbitrators, or any of them;
(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.
**§ 658–10 Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
(1) Where there was evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

tion award was not made in accordance with HRS Chapter 658 and, consequently, cannot be sustained on that basis.

### C.

■ We are cognizant of the fact that "[HRS] § 658–9 and [HRS] § 658–10 also restrict the authority of [appellate courts] to review judgments entered by circuit courts" under the arbitration statute. *Mars Constr. v. Tropical Enter.,* 51 Haw. 332, 336, 460 P.2d 317, 320 (1969). "[A]ppellate courts reviewing a § 658–8 confirmation award under HRS § 658–15 are restricted to a consideration of the seven specific grounds included in HRS §§ 658–9 and 658–10" and thus are not free "to review a confirmation award to the same extent as any other judgment[.]" *Excelsior,* 74 Haw. at 226, 847 P.2d at 660.

■ However, in *Gozum v. Am. Int'l Adjustment Co.,* 72 Haw. 41, 44, 805 P.2d 445, 446 (1991), the Hawai'i Supreme Court adopted a judicially recognized exception to HRS Chapter 658, when it allowed a party to move in the circuit court for "clarification" by the arbitrator of an ambiguous arbitration award because "clarification . . . does not fit within the literal definition of vacating, modifying, or correcting an award." In *Gozum,* "a party [was] not . . . barred from asking for a *clarification* of an arbitrator's award at a § 658–8 confirmation hearing, even though that party had failed to bring a timely motion under either HRS § 658–9 or 658–10." *Excelsior,* 74 Haw. at 221, 847 P.2d at 658 (emphasis in the original).

Like the "clarification" exception, Sause's claim of a conflict between finding three and 46 U.S.C. § 8104 "does not fit within the literal definition of vacating, modifying or correcting an award." *Gozum,* 72 Haw. at 44, 805 P.2d at 446. A party's claim that an arbitrator's award under a contract would compel it to violate a statute necessarily invokes consideration of a public policy exception to the general deference given arbitration awards which does not fit within the literal definition of vacating, modifying or

The order may modify and correct the award, so as to effect the intent thereof, and

correcting an award under the express provisions of HRS chapter 658.

### III.

■ A court will not enforce "any contract . . . that is contrary to public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 307 (1983). It follows then that "if the contract as interpreted [by an arbitrator] violates some explicit public policy, [the courts] are obligated to refrain from enforcing it." *Id.* Thus, the U.S. Supreme Court has recognized a "public policy" exception to the general deference given arbitration awards. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. [The "public policy" exception] derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interest in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements.

*Id.* at 42, 108 S.Ct. at 373, 98 L.Ed.2d at 301–02 (citations omitted).

■ In *Misco,* the U.S. Supreme Court considered "the question of when courts may set aside arbitration awards as contravening public policy." *Id.* at 35, 108 S.Ct. at 369, 98 L.Ed.2d at 297. In doing so, it did "not . . . sanction a broad judicial power to set aside arbitration awards as against public policy." *Id.* at 43, 108 S.Ct. at 373, 98 L.Ed.2d at 302. Under *Misco,* the test established for application of the public policy exception requires a court to determine that (1) the award

promote justice between the parties.

"would violate 'some explicit public policy' that is 'well defined and dominant, and [that] is ... ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests[,]' " and (2) the "violation of [the public] policy [is] clearly shown." *Id.* (quoting *W.R. Grace & Co.*, 461 U.S. at 766, 103 S.Ct. at 2183, 76 L.Ed.2d at 307). Hence, "[a] refusal to enforce an [arbitration] award must rest on more than speculation or assumption." *Id.* at 44, 108 S.Ct. at 374, 98 L.Ed.2d at 302.

We have also recognized the general common law doctrine that a court may refuse to enforce contracts that violate law or public policy. *See Aiea Lani Corp. v. Hawaii Escrow & Title Inc.*, 64 Haw. 638, 647 P.2d 257 (1982) (contract for "kickbacks" which was illegal is not enforceable); *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304 (1980) (part of the contract violated statute that forbade unfair and deceptive practices by attorneys and therefore was illegal but that portion was severable and rest of the contract which was not illegal was held to be enforceable); *Wilson v. Kealakekua Ranch*, 57 Haw. 124, 551 P.2d 525 (1976) (a contract will be unenforceable if the violation of public policy was intended to protect the public from fraud and incompetence, but not if the public policy was only *malum prohibitum* or to raise revenue); *Miehlstein v. King Market Co.*, 24 Haw. 540 (1918) (a contract involving a city official performing work he is prohibited from performing by law violates public policy and is unenforceable); *Goo Wan Hoy v. McKeague*, 24 Haw. 263 (1918) (promissory note was void because consideration for the note was intoxicating liquors sold without a liquor license which was prohibited by criminal law); *Cosmopolitan Fin. Corp. v. Runnels*, 2 Haw.App. 33, 625 P.2d 390 (1981) (the law will not be used to enforce any part

of an illegal bargain). " 'Illegal contracts are generally unenforcible [sic].' " *Wilson*, 57 Haw. at 128, 551 P.2d at 528 (quoting *John E. Rosasco Creameries v. Cohen*, 276 N.Y. 274, 11 N.E.2d 908 (1937)).

Therefore, our courts are as capable as the U.S. Supreme Court and other courts[4] in administering this "specific [public policy] application" of the general common law doctrine relating to illegal contracts.

■ We hold, therefore, that there is a limited public policy exception to the general deference given arbitration awards. The exception is to be applied under the guidelines set forth in *Misco* and as such guidelines may be refined in future cases.

## IV.

We turn, then, to an examination of Sause's claim that finding three violated 46 U.S.C. § 8104 in light of the public policy exception.

We are not convinced that the enforcement of finding three of the arbitration award will necessarily result in a violation of the subject federal statute, given what we believe to be a reasonable construction of the statute.

Sause's argument against the enforcement of the arbitration award is based on the contention that 46 U.S.C. § 8104 would be violated "in some circumstances." But it posits only one example on appeal, contending that the arbitration award may result in crew members working in excess of the eight-hour work day prescribed by 46 U.S.C. § 8104(d).

■ In its hypothetical, Sause claims that a crew member may be assigned to two four-hour watches, the 0800–1200[5] watch and the

---

**4.** The public policy exception has been applied in other instances. *E.g. Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1025 (10th Cir.1993) (arbitration award denying health insurance benefits for liver transplant was not within "public policy" exception because it did "not violate a clearly expressed law"); *In re Silverberg*, 75 A.D.2d 817, 427 N.Y.S.2d 480 (1980) (arbitration agreement which would violate the Attorney's Code of Professional Conduct and allow the award of punitive damages was void as against public policy); *Psychoanalytic Center, Inc. v.*

*Burns*, 62 A.D.2d 963, 404 N.Y.S.2d 106 (1978) (confirmation of an arbitration award validating the splitting of fees with a psychologist violated the law and was vacated); *W. Union Tel. v. Am. Communication Ass'n*, 299 N.Y. 177, 86 N.E.2d 162 (1949) (arbitration award was not enforced where it would violate the penal law).

**5.** Sause uses the twenty four-hour clock. The time period indicated is the equivalent of 8:00 A.M. to noon.

2000–0000[6] "outport" watch, which the crew member must be allowed to complete under the arbitration award. But according to Sause, a crew member may also be required under 46 U.S.C. § 8104(f) to assist in "maneuvering, shifting the berth of, mooring, or unmooring the vessel" between 0100–0700[7]. Consequently, Sause argues, the crew member would have worked more than the eight hours allowed under 46 U.S.C. § 8104 in a twenty four-hour day.

We analyze Sause's argument.

46 U.S.C. § 8104(d) provides that:[8]

On a merchant vessel of more than 100 gross tons ... the licensed individuals, sailors, coal passers, firemen, oilers, and water tenders shall be divided, when at sea, into at least 3 watches, and shall be kept on duty successively to perform ordinary work incident to the operation and management of the vessel.... *A licensed individual or seaman in the deck or engine department may not be required to work more than 8 hours in one day.*

*Id.* (emphasis added). The section, however, is qualified by 46 U.S.C. § 8104(f) which states:

*Subsections (d) and (e) of this section do not limit the authority of the master* or other officer or the obedience of the seamen *when, in the judgment of the master* or other officer, *any part of the crew is needed for—*

(1) *maneuvering, shifting the berth of, mooring, or unmooring, the vessel;*

(2) performing work necessary for the safety of the vessel, or the vessel's passengers, crew, or cargo;

(3) saving life on board another vessel in jeopardy; or

(4) performing fire, lifeboat, or other drills in port or at sea.

*Id.* (emphasis added). Thus, by virtue of 46 U.S.C. § 8104(f), time spent on "maneuvering, shifting the berth of, mooring, or unmooring, the vessel" is not limited by the eight-hour standard in 46 U.S.C. § 8104(d), when the additional work is requested in the master's discretion.[9]

This interpretation is further buttressed by 46 C.F.R. § 15.710 which states:

In addition to prescribed watch requirements, *46 U.S.C. § 8104 sets limitations on the working hours of* licensed individuals and *crew members,* prescribes certain rest periods, and prohibits unnecessary work on Sundays and certain holidays when the vessel is in a safe harbor. It is the responsibility of the master or person in charge to ensure that these limitations are met. *However, under 46 U.S.C. § 8104(f), the master or other licensed individuals can require any part of the crew to work when, in his or her judgment, they are needed for:*

*(a) Maneuvering, shifting berth, mooring, unmooring;*

(b) Performing work necessary for the safety of the vessel, or the vessel's passengers, crew, or cargo;

(c) Saving life on board another vessel in jeopardy; or

(d) Performing fire, lifeboat, or other drills in port or at sea.

*Id.* (emphasis added).

■■■ Hence, in the example proffered by Sause, the assignment of a crew member to eight hours of work (four hours during the 0800–1200 watch and four hours during the 2000–0000 watch) would not violate 46 U.S.C.

---

**6.** 8:00 P.M. to midnight.

**7.** 1:00 A.M. to 7:00 A.M.

**8.** The penalty for violating this subsection is as follows: The owner, charterer, or managing operator of a vessel on which a violation of subsection (c), (d), (e), or (h) of this section occurs is liable to the Government for a civil penalty of $500. The seaman is entitled to discharge from the vessel and receipt of wages earned.
46 U.S.C. § 8104(j).

**9.** Our interpretation is further supported by the other subsections of 8104(f). Understandably, work involved in the preservation and protection of life and property may be required in addition to the normally assigned watches when, "in the judgment of the master[,]" "seamen" are required to perform such functions. Work involving "maneuvering, shifting the berth of, mooring or unmooring, the vessel[,]" is treated in the same way as these functions under the express language of subsection 8104(f).

§ 8104(d) if that crew member should happen to be called out for maneuvering, shifting the berth of, and mooring or unmooring the vessel pursuant to 46 U.S.C. § 8104(f) while off watch. Consequently, there is no violation of 46 U.S.C. § 8104(d) under Sause's example.

The purpose of the arbitration award was to prevent Sause from terminating scheduled watches in order to avoid paying overtime. The arbitration award only directs that "employees have the right to complete their scheduled watches," leaving "[Sause] the right to assign and schedule work." Therefore, Sause, as employer, has the power and discretion to schedule watches and to have employees assist with "maneuvering, shifting the berth of, mooring, or unmooring, the vessel" so as to comply with both the arbitration award and 46 U.S.C. § 8104(d).

■ While Sause points us to a specific statute, "the violation of such a [statute has not been] ... clearly shown." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. at 43, 108 S.Ct. at 373–74, 98 L.Ed.2d at 302 (1987). Sause's hypothetical, so far as we can discern, rests more on "speculation or assumption" than on some "explicit conflict" between the arbitration award and the statute. *Id.* We are mindful that the public policy exception "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy" and that we "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id. See also Excelsior Lodge Number One v. Eyecor, Ltd.,* 74 Haw. 210, 847 P.2d 652 (1992).

Thus, we hold that the record is insufficient to establish a conflict between the arbitrator's finding three and 48 U.S.C. § 8104(d), as to the specific example offered by Sause on appeal.[10]

## V.

Accordingly, we (1) vacate the Order Granting Respondent Sause Bros., Inc.'s Motion for Reconsideration of Order Re: Movant Inlandboatmen's Union of the Pacific's Motion for Issuance of an Order to Show Cause Why Respondent Sause Bros., Inc. Should Not Be Held in Contempt of Court for Failing to Comply with the Judgment Entered Herein on September 7, 1990 Filed on May 31, 1991, which was filed on November 20, 1991; (2) reinstate the Order Granting Movant Inlandboatmen's Union of the Pacific's Motion for an Issuance of an Order to Show Cause Why Respondent Sause Bros., Inc. Should Not Be Found In Contempt of Court for Failing to Honor the Judgment Entered Herein on September 7, 1990, which was filed on May 22, 1991; and (3) remand for further proceedings as may be deemed appropriate by the circuit court in connection with the order filed on May 22, 1991.

---

10. As stated, 46 U.S.C. § 8104(d) pertains to "merchant vessels of more than 100 gross tons." Union claims, however, that 46 U.S.C. § 8104(g) and (h) apply rather than 46 U.S.C. § 8104(d) because those sections apply to "towing vessels," and the "vessels in question were towing ves-

sels." These arguments are raised for the first time on appeal. We only decide the specific example presented by Sause, which it contends would result in a violation of 46 U.S.C. § 8104(d).