**Electronically Filed
Intermediate Court of Appeals
29710
12-JUL-2011
11:02 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

In the Matter of the Arbitration Between

UNITED PUBLIC WORKERS, AFSCME, Local 646, AFL-CIO,
Union-Appellee,
and
CITY AND COUNTY OF HONOLULU
HOLIDAY PAY; (2003-022C),
Employer-Appellant

NO. 29710

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P. NO. 08-1-0147)

JULY 12, 2011

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Employer-Appellant City and County of Honolulu (the City or Employer) appeals from the Judgment filed on February 27, 2009 in the Circuit Court of the First Circuit[1] (circuit court).

---

[1] The Honorable Victoria S. Marks presided.

The circuit court entered judgment in favor of Union-Appellee United Public Workers, AFSCME, Local 646, AFL-CIO, (Union) and against the City pursuant to the following orders:

(1) "Order Denying Employer's Motion to Vacate Arbitrator Walter Ikeda's April 16, 2008 Decision and Order on Motion for Summary Disposition [(Pre-Award Decision)] Filed May 12, 2008," entered on July 2, 2008 (Order Denying City's Motion to Vacate Pre-Award Decision);

(2) "Order Granting Union's Motion to Confirm Pre-Award Ruling, Entry of Judgment, and Order Allowing Reasonable Costs and Attorney's Fees Filed April 21, 2008," entered on February 27, 2009 (Order Granting Union's Motion to Confirm Pre-Award Decision);

(3) "Order Denying Employer's Motion to Vacate Arbitrator Walter Ikeda's January 14, 2009 Decision and Award, Holiday Back Pay, Interest, Attorney's Fees [(Final Award or Final Arbitration Award)] Filed on January 28, 2009," entered on March 3, 2009[2] (Order Denying City's Motion to Vacate Final Award); and

(4) "Order Granting Union's Motion to Confirm Final Arbitration Award, Entry of Judgment, and Order Allowing Costs and Attorney's Fees Filed January 20, 2009," entered on February 27, 2009 (Order Granting Union's Motion to Confirm Final Award).

On appeal, the City contends:

(1) The circuit court erred when it found in favor of Union pursuant to (a) the Order Denying City's Motion to Vacate Pre-Award Decision, wherein the court stated that Arbitrator Walter Ikeda (the Arbitrator) "did not exceed his powers or authority by rendering the April 16, 2008 [Pre-Award Decision]"; (b) the Order Granting Union's Motion to Confirm Final Award, in

_____

[2] The Judgment stated that this order was filed by the circuit court on February 27, 2009. The record reflects that the order was not filed until March 3, 2009.

which the court found that the Arbitrator "acted within the scope of his authority by sustaining the class grievances for violations of Sections 1, 14, and 35 of the collective bargaining agreements" (CBAs)[3]; and (c) the Order Denying City's Motion to Vacate Final Award, wherein the court found that the Arbitrator "did not exceed his powers or authority by rendering the January 14, 2009 [Final Award]."

The City contends that because Union's Step 1 and Step 2 grievances mentioned the issue of holiday pay for Unit 1 and Unit 10 members on unpaid leave during a holiday but did not specifically mention the issue of holiday pay for members on workers' compensation leave, the Arbitrator exceeded his authority when, after addressing the issue of holiday pay for members on unpaid leave, he addressed the issue of holiday pay for members who were on workers' compensation leave.

(2) In the Order Granting Union's Motion to Confirm Pre-Award Decision, the circuit court erred when it confirmed the order of the Arbitrator in the Pre-Award Decision that the 2003 Parnell[4] and 2007 Ikeda[5] arbitration decisions collaterally estopped the City from contesting the right of Unit 1 and Unit 10 members to holiday pay while on unpaid leave or workers' compensation leave.

(3) The circuit court erred when it (a) confirmed in its Order Granting Union's Motion to Confirm Final Award, pursuant to Hawaii Revised Statutes (HRS) § 658A-25(b) and (c) (Supp. 2010), the Arbitrator's award of reasonable attorney's

---

[3] At the time the grievances were filed, the Unit 1 and Unit 10 CBAs were effective July 1, 2003 to June 30, 2005.

[4] In re Arbitration Between State of Hawaii (State), University of Hawaii, Employer, and United Public Workers, AFSCME, Local 646, AFL-CIO, Union, Re: Class Grievance Involving DENIAL OF HOLIDAY PAY (Edward J. Parnell, Arbitrator, 2003) (referred to as 2003 Parnell).

[5] In re United Public Workers, AFSCME, Local 646, AFL-CIO, Union, and University of Hawaii, Employer, Grievance of Yong Mi Han (Walter Ikeda, Arbitrator, 2007) (referred to as 2007 Ikeda). Walter Ikeda is the same arbitrator as in the instant case.

3

fees and costs to Union for preparation of a reply brief and (b) found in its Order Denying City's Motion to Vacate Final Award that the Arbitrator did not disregard CBA Section 15.21 and the award of attorney's fees was authorized under HRS §§ 658A-17(d) (Supp. 2010) and 658A-21(b) (Supp. 2010) as a discovery sanction.

(4) The circuit court erred when it found in (a) the Order Denying City's Motion to Vacate Pre-Award Decision that "the April 16, 2008 [Pre-Award Decision] is not contrary to public policy" and (b) the Order Denying City's Motion to Vacate Final Award that enforcement of the Final Award was not contrary to public policy. City claims that the Pre-Award Decision and the Final Award violated public policy because the Arbitrator's decision materially altered the collective bargaining grievance process.

(5) In its Order Granting Union's Motion to Confirm Final Award, the circuit court erred when it found in the Final Award that the "final decision and award incorporate the findings, conclusion, and order of the [Pre-Award Decision]."

## I.

On August 22, 2003, Union filed two class action Step 1 grievances against City on behalf of public collective bargaining Units 1 and 10.[6] Union alleged violations of Sections 1, 14, 15, 23A, 35, and 64 of the Unit 1 and Unit 10 CBAs. At issue was the denial of holiday pay by the City to Unit 1 and Unit 10 employees. The holiday pay issue was not resolved at Step 1 or Step 2 of the CBA grievance procedure, and the issue proceeded to binding arbitration pursuant to the CBAs. By agreement of the parties, the two cases were consolidated into a single proceeding before the Arbitrator.

---

[6] Unit 1 employees are non-supervisory blue collar public workers; Unit 10 employees are institutional, health, and correctional public workers. Union is the exclusive bargaining representative for Unit 1 and Unit 10 employees.

On January 31, 2008, Union submitted a Motion for Summary Disposition to the Arbitrator, seeking a ruling whether two prior arbitration decisions on holiday pay and eligibility, the 2003 Parnell decision and the 2007 Ikeda decision, were final and binding on the City under HRS § 89-10.8 (Supp. 2010) and Section 15.20b of the CBAs. Union had contended in its grievances that the 2003 Parnell decision was final and binding on the City under the multi-employer bargaining process.[7]

On April 16, 2008, the Arbitrator issued the Pre-Award Decision in favor of Union, finding that even though the City was not a party to the 2003 Parnell and 2007 Ikeda cases, it was in privity with the State of Hawai'i (State) (which had litigated the holiday pay issues in the Parnell and Ikeda cases) and therefore, was estopped from contesting the general right of Unit 1 and Unit 10 members to holiday pay while on unpaid leave of absence pursuant to the 2003 Parnell Decision or while on workers' compensation leave pursuant to the 2007 Ikeda Decision.

On April 21, 2008, Union filed a motion with the circuit court to confirm the Arbitrator's Pre-Award Decision. On May 12, 2008, the City filed a motion to vacate the Pre-Award Decision. On July 2, 2008, the circuit court entered the Order Denying City's Motion to Vacate Pre-Award Decision.

On January 14, 2009, the Arbitrator issued the Final Award in favor of Union, resolving issues regarding holiday back pay, interest, and attorney's fees. On January 20, 2009, Union filed a Motion to Confirm Final Arbitration Award, Entry of Judgment, and Order Allowing Costs and Attorney's Fees. The City filed a motion to vacate the Final Award on January 28, 2009. On February 27, 2009, the circuit court entered the Order Granting Union's Motion to Confirm Pre-Award Decision, Order Granting Union's Motion to Confirm Final Award, and Judgment in favor of

---

[7] Union could not have mentioned the 2007 Ikeda case because at the time the grievances were filed in 2003, the 2007 Ikeda case had not occurred.

Union and against the City. The circuit court entered the Order Denying City's Motion to Vacate Final Award on March 3, 2009.

On March 17, 2009, the City timely appealed.

## II.

### A. ARBITRATION AWARD

The appellate court reviews "the circuit court's ruling on an arbitration award de novo" and is also "mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks, citation, and brackets omitted).

The appellate court's review of arbitration awards is guided by the following principles:

> It is well settled that because of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to the strictest possible limits. As such, a court has no business weighing the merits of the arbitration award. Indeed, the legislature has mandated that a court may vacate an arbitration award only on the four grounds specified in HRS § 658-9,[8] and may modify or correct an award only on the three grounds specified in HRS § 658-10. Therefore, HRS § 658-8 contemplates a judicial confirmation of the award issued by the arbitrator, unless the award is vacated, modified, or corrected in accord with HRS §§ 658-9 and 658-10.
>
> Based upon the policy limiting judicial review of arbitration awards, [the Hawai'i Supreme Court] has held that parties who arbitrate a dispute assume all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact. Where arbitration is made in good faith, parties are not permitted to prove that an arbitrator[] erred as to the law or the facts of the case.

Id. (internal quotation marks, citations, ellipses, and brackets in original omitted; block quote format changed).

---

[8] HRS Chapter 658 was repealed in 2001 when the Hawai'i Legislature adopted Chapter 658A, based on the Uniform Arbitration Act. 2001 Haw. Sess. Laws Act 265, § 1 at 810 & § 5 at 820. The former § 658-9 (Vacating award) is now § 658A-23, § 658-8 (Award and confirming award) was split into § 658A-19 and § 658A-22, and § 658-10 (Modifying or correcting award) is now § 658A-24.

## B.    SCOPE OF ARBITRATOR'S AUTHORITY

"The scope of an arbitrator's authority is determined by agreement of the parties.  An arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted." Clawson v. Habilitat, Inc., 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989).  "[W]here an arbitrator has exceeded his or her powers by deciding matters not submitted, [the Hawai'i Supreme Court] has held, pursuant to HRS § 658-9(4),[9] that the resulting arbitration award must be vacated."  Tatibouet, 99 Hawai'i at 235, 54 P.3d at 406.

> When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator.  Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.  This remains so even when the basis for the arbitrator's decision may be ambiguous.

W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 764, 103 S. Ct. 2177, 2182 (1983) (internal quotation marks, citations, and brackets omitted).

> Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.  [The second arbitrator's] conclusions that [the first arbitrator] acted outside his jurisdiction and that this deprived [the first arbitrator's] award of precedential force under the contract draw their "essence" from the provisions of the collective bargaining agreement.  Regardless of what our view might be of the correctness of [the second arbitrator's] contractual interpretation, the Company and the Union bargained for that interpretation.  A federal court may not second-guess it.

Id. at 765, 103 S. Ct. at 2183.

---

[9]   Now HRS § 658A-23(4) (Supp. 2010).

## C.   PUBLIC POLICY

A court may not enforce any contract "that is contrary to public policy." Id. at 766, 103 S. Ct. at 2183.  It follows that "[i]f the contract as interpreted [by an arbitrator] violates some explicit public policy, [the courts] are obliged to refrain from enforcing it." Id.  Thus, the United States Supreme Court has recognized a public policy exception to the general deference given arbitration awards. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 42-43, 108 S. Ct. 364, 373-74 (1987) (to refuse to enforce an arbitration award, the alleged violation of public policy must be clearly shown).

> [T]he public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown.  Hence, a refusal to enforce an arbitration award must rest on more than speculation or assumption.

Inlandboatmen's Union of the Pac., Hawai'i Region, Marine Div. of Int'l Longshoremen's & Warehousemen's Union v. Sause Bros., Inc., 77 Hawai'i 187, 193-94, 881 P.2d 1255, 1261-62 (App. 1994) (internal quotation marks, citations, brackets, and ellipsis omitted).

### III.

## A.   SCOPE OF ARBITRATOR'S AUTHORITY

In its review of arbitration awards, the circuit court must afford extreme deference to the arbitrator's ruling. Tatibouet, 99 Hawai'i at 233, 54 P.3d at 404.  Whether the circuit court erred in confirming the Arbitrator's Pre-Award Decision and the Final Award requires an interpretation of HRS Chapter 658A -- a question of law reviewable de novo. Tatibouet, 99 Hawai'i at 233, 54 P.3d at 404.  In our review of the circuit court's ruling, we are cognizant of the circuit court's application of extreme deference. Id.

Because the City and Union agreed under the CBA to have an arbitrator rather than a judge resolve disputes, "it is the arbitrator's view of the facts and of the meaning of the contract that [the City and Union] have agreed to accept." Misco, 484 U.S. at 37-38, 108 S. Ct. at 370. "Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." Id. at 37, 108 S. Ct. at 370.

Union is certified as the bargaining agent for Unit 1 and Unit 10 public employee collective bargaining units. Pursuant to HRS Chapter 89, the CBAs are multi-party agreements. HRS § 89-6 (Supp. 2010). Unit 1 and Unit 10 CBAs are signed by the designated representatives of Union, the State, the counties, the Hawai'i judiciary, and the Hawaii Health Systems Corporation board. HRS § 89-6(d)(1). Unit 1 and Unit 10 CBAs are substantially the same and are intended to apply uniformly to the public employers and the bargaining unit employees. A simple majority of the signatories is needed to reach any decision and must include at least one county when the bargaining unit itself includes employees from more than one county. HRS § 89-6(d) As part of the process of negotiating CBAs, employer personnel and senior management staff meet to discuss issues, create consensus positions in negotiating the new contracts, and determine the impact of arbitrator decisions in arbitrated cases.

The CBAs provide a grievance procedure to address any "grievance that arises out of alleged Employer violation, misinterpretation, or misapplication of [the CBA]." CBA Section 15.01. If the grievance is not resolved at Step 1 or Step 2 of the grievance procedure, Union may request arbitration. CBA Section 15.13a. At the end of the arbitration process, the arbitrator makes a decision and issues an award which "shall be final and binding provided, the award is within the scope of the Arbitrator's authority." CBA Section 15.20b.

As part of the arbitration procedure set forth in the CBAs, the arbitrator determines the issues to be arbitrated at the hearing.

> 15.18   ISSUES TO BE ARBITRATED
>
> 15.18a.   Within five (5) calendar days after the Arbitrator has been selected each party may submit a statement of its view as to the issue(s) to the Arbitrator with a copy to the other party.
>
> 15.18b.   The Arbitrator shall determine the issue(s) at the hearing.

(Emphasis added.)   However, the arbitrator may not consider allegations that were not alleged at Step 1 or Step 2 of the grievance process.   Section 15.20b.4.

The CBAs define the scope of the arbitrator's authority in rendering his decision and award:

> 15.20   AWARD.
>
> 15.20a.   The Arbitrator shall render the award in writing no later than thirty (30) calendar days after the conclusion of the hearing(s) and submission of briefs provided, however, the submission of briefs may be waived by mutual agreement between the Union and the Employer.
>
> 15.20b.   The award of the Arbitrator shall be final and binding provided, the award is within the scope of the Arbitrator's authority as described as follows:
>
> 15.20b.1.   The Arbitrator shall not have the power to add to, subtract from, disregard, alter, or modify any of the sections of this [CBA].
>
> 15.20b.2.   The Arbitrator shall be limited to deciding whether the Employer has violated, misinterpreted, or misapplied any of the sections of this [CBA].
>
> 15.20b.3.   A matter that is not specifically set forth in this [CBA] shall not be subject to arbitration.
>
> 15.20b.4.   The Arbitrator shall not consider allegations which have not been alleged in Steps 1 and 2.

(Emphasis added.)

The City argues that the only issue before the Arbitrator was holiday pay for bargaining unit members on leaves of absence without pay, not holiday pay for members on workers' compensation leave.   The City claims that when the Arbitrator also ruled on the issue of holiday pay for members on leave under

workers' compensation, the Arbitrator violated Section 15.20b.4 of the CBA by considering allegations that had not been alleged at Step 1 and Step 2 of the grievance procedure.

In response, Union contends that CBA Section 15.18 expressly grants the Arbitrator the authority to determine the issues being addressed at the arbitration hearing. Union argues that the grievances were not as narrowly construed as suggested by the City and points to paragraph f of the grievance form, which states: "No state statute on leaves of absences (<u>with or without pay</u>) renders employees ineligible (or disqualified) for holiday pay and benefits by reason of their use or receipt of leaves of absences (<u>with or without pay</u>)." (Emphasis added.) Union argues that paragraph f, by extension, includes leaves of absences under workers' compensation. Union points out that the grievances broadly alleged violations of Sections 1, 14, 15, 23A, 35, and 64 of the Unit 1 and Unit 10 CBAs, which include prior rights to paid holidays under Sections 14 and 35.

The Arbitrator, in the Pre-Award Decision, determined that the consolidated cases alleging violations under the Unit 1 and Unit 10 CBAs were about "the issue of holiday pay eligibility and benefits." He noted that the grievances challenged the alleged failure of the City to give members paid holidays as provided for by statute and the CBAs. According to the Arbitrator, "[i]t was evident that the principal gravamen of the grievances were about entitlement to holiday pay in a number of leave situations that an employee was using such as leave without pay or workers['] compensation leave where the worker is on leave but receiving a monetary stipend in lieu of pay." The Arbitrator dismissed the City's contention that it had not been sufficiently notified that the grievances asserted employees' entitlement to holiday pay while on workers' compensation leave by pointing out that Union's interrogatories and requests for admissions specifically asked about employees on workers' compensation leave as well as those on leave without pay.

11

The Arbitrator must look to the CBA itself in making his decision and award. Univ. of Hawaii Prof'l Assembly ex. rel. Daeufer v. Univ. of Hawaii, 66 Haw. 214, 223, 659 P.2d 720, 727 (1983). The arbitrator's award "is legitimate only so long as it draws its essence from the [CBA]." Id. (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960)). In Tatibouet, the Hawaiʻi Supreme Court stated that the United States Court of Appeals for the Ninth Circuit had interpreted the phrase "draws its essence" to mean that the "reviewing court must look to the arbitration clause, the words of the contract, and the conduct of the parties." Tatibouet, 99 Hawaiʻi at 235 n.7, 54 P.3d at 406 n.7. But even in this process, "the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Id. at 233, 54 P.3d at 404 (internal quotation marks, citation, and brackets omitted).

In the instant case, the arbitration clause of the CBA provides for the arbitrator to determine the issues to be addressed at the arbitration hearing. The CBA states that the arbitrator cannot consider allegations not raised at Step 1 or Step 2 of the grievance procedure. The Arbitrator determined that the grievances alleged violations related to the broad issue of holiday pay eligibility and benefits and, thus, could be considered at arbitration. The Arbitrator pointed to the interrogatories and requests for admissions, as well as the City's responses, as behavior that indicated the understanding of both parties that the grievances were about holiday pay for members on leave without pay and also for members on workers' compensation leave.

"[T]he scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." W.R. Grace, 461 U.S. at 765, 103 S. Ct. at 2183. We conclude that the Arbitrator's award drew its essence from the CBA and the Arbitrator acted within the scope of

his authority in determining the issues submitted for arbitration. The circuit court did not err when it held that the Arbitrator had not exceeded his authority because the scope of the grievances and effect of prior arbitration awards were "questions of contract interpretation and application which have been delegated to the arbitrator to decide."

### B.   COLLATERAL ESTOPPEL/ISSUE PRECLUSION

The City contends the circuit court erred when it found, pursuant to the Order Granting Union's Motion to Confirm the Pre-Award Decision, that the Arbitrator correctly ordered:

> The City and County of Honolulu is estopped from contesting the general right of Unit One and Unit Ten members to holiday pay while on unpaid leave of absence as determined by Arbitrator Parnell in the matter of United Public Workers vs. the University of Hawaii issued on January 22, 2003 and the right to receive holiday pay while on workers['] compensation leave as determined by Arbitrator Ikeda in United Public Workers on behalf of Yong Mi Han against the University of Hawaii on August 30, 2007.

In 2003 Parnell, arbitrator Edward Parnell issued a decision and award against the University of Hawai'i and in favor of Union bargaining Unit 1, determining that "employees on leave of absences without pay before, during, or after a holiday observance were entitled to holiday pay under Section 35." After the 2003 Parnell decision and award was confirmed by the circuit court, it "became final and binding under Section 15.20b of the [CBAs]." Union then requested public employers to comply with CBA Sections 1 and 35 as interpreted by the 2003 Parnell ruling and provide bargaining Unit 1 and Unit 10 employees "with their holiday entitlements (where they are on leave of absences without pay before, during, or after the holiday observance)." When the City refused to comply, Union filed the two August 22, 2003 grievances at issue in the present case.

The 2007 Ikeda decision involved a University of Hawai'i Unit 1 member who was denied holiday pay while on workers' compensation leave of absence and receiving temporary disability benefits. On behalf of the member, Union filed a

grievance form nearly identical in its description as the grievances at issue in the instant case. In his Decision and Award, the Arbitrator described the 2003 Parnell case as being about a member desiring to be paid for a holiday where, following a period of leave without pay, the member had returned to work on the day after the holiday. The Arbitrator determined that the employer could have, in good faith, seen it as a narrow holding that did not apply to a case about holiday pay while on workers' compensation leave. The Arbitrator concluded that "the general principle of entitlement to holiday pay while on workers' compensation benefits should be applicable to all employees of bargaining unit 1 in state and county employment." He also determined that "[a] reasonable person would have a substantial basis to believe that paid holidays are an established right . . . when they are described in a statute and incorporated by reference by reason of section 14.01 of the CBAs dating back to 1972."

The City argues that the doctrine of collateral estoppel, or issue preclusion,[10] was improperly applied because the City was not a party to the 2003 Parnell or 2007 Ikeda decisions.[11] The City maintains that it was not given notice of the grievances set forth in those cases nor was it given an opportunity to be heard, violating its right to due process.

Issue preclusion prevents the relitigation of a fact or issue that was determined in a prior case on a different cause of action between the same parties or their privies. Bremer v.

---

[10] In Exotics Hawai'i-Kona, Inc. v. E.I. Dupont De Nemours & Co., 104 Hawai'i 358, 365 n.14, 90 P.3d 250, 257 n.14 (2004), the Hawai'i Supreme Court, in an effort to avoid confusion, chose to use the term "issue preclusion" rather than "collateral estoppel." We do likewise.

[11] We note, in the first instance, that "vacatur is not a proper remedy for arbitrators' imperfect understanding of law." Tatibouet, 99 Hawai'i at 236, 54 P.3d at 407. Thus, even if the Arbitrator committed a legal error in reaching his final decision, the award may not be vacated on that ground. See id. However, inasmuch as the City's public policy argument is based also on the contention that the Arbitrator applied issue preclusion in violation of due process, we address the argument here.

Weeks, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004). "The doctrine is intended to protect litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation." Tradewind Ins. Co. v. Stout, 85 Hawai'i 177, 184, 938 P.2d 1196, 1203 (App. 1997). "[I]ssue preclusion and claim preclusion share the common goals of preventing inconsistent results, preventing a multiplicity of suits, and promoting finality and judicial economy." Exotics Hawaii-Kona, 104 Hawai'i at 365, 90 P.3d at 257 (internal quotation marks and citation omitted).

The party wishing to assert issue preclusion bears the burden of establishing that

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication[.]

Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999).

The City contends that because the University of Hawai'i, not the City, was the defendant in the 2003 Parnell and 2007 Ikeda cases, the fourth element of issue preclusion has not been met. And because the City was not a party to the prior adjudication, the City argues that issue preclusion violated its right to notice and an opportunity to be heard.

In Tradewind, this court considered equitable factors to ensure that the due process rights of a non-party to the prior decision were not violated when issue preclusion was applied:

> [D]ue process requires that the estopped party have an identity or community of interest with, and adequate representation by, the losing party in the first action and reasonably expects to be bound by the prior adjudication. [*Safeco Ins. Co. of Am. v. Yon*, 796 P.2d 1040, 1044 (Idaho Ct. App. 1990).] When applying this rule, . . . various equitable factors . . . must be considered:
>
>> Whether it would be generally unfair in the second case to use the result of the first case, whether assertion of the plea of estoppel by a stranger to the judgment would create anomalous result[s], whether the party adversely affected by the [issue preclusion]

>offers a sound reason why he should not be bound by
>the judgment, and whether the first case was litigated
>strenuously or with vigor.

Id. at 1045.

85 Hawai'i at 187-88, 938 P.2d at 1206-07 (brackets in original omitted).

Tradewind's insured, Romel, was convicted in a criminal case of attempted second degree murder of Stout. Id. at 179, 938 P.2d at 1198. Romel lived with his parents (the Castros) at the time he shot Stout. Id. at 179 n.3, 938 P.2d at 1198 n.3. Tradewind filed a complaint for declaratory action against Romel, the Castros, and Stout, seeking a judgment that Tradewind, the insurer under the Castros' insurance policy, had no duty to defend or indemnify its insured (Romel) or to pay Stout for personal injuries she suffered when Romel shot her. Id. at 179, 938 P.2d at 1198. Tradewind moved for summary judgment, and the circuit court ruled that Tradewind had no duty to defend Romel. Id. Stout appealed. Id. The Hawai'i Supreme Court stated that one of the issues on appeal was "whether, as a result of Romel's criminal conviction, Stout was [prevented by issue preclusion] from litigating the question of whether her bodily injuries were or were not 'expected or intended' by Romel." Id. at 181, 938 P.2d at 1200. The supreme court considered the equitable factors and held that "[t]he policies of promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and protecting against vexatious litigation" supported the application of issue preclusion. Id. at 188, 938 P.2d at 1207 (footnote omitted).

We also note that in Exotics Hawai'i-Kona, the Hawai'i Supreme Court expanded the doctrine of issue preclusion by recognizing nonmutual offensive issue preclusion. 104 Hawai'i at 371, 90 P.3d at 263. Under the traditional mutuality doctrine, "neither party could use a prior judgment as an estoppel against

the other unless both parties were bound by the judgment." Id. at 365, 90 P.3d at 257 (internal quotation marks and citation omitted). Nonmutual offensive issue preclusion eliminates the requirement of mutuality of interest and expands the concept of privity and mutuality to bind non-parties. Id. at 369, 90 P.3d at 261. The supreme court held that the party asserting issue preclusion must satisfy the four-part test set forth in Dorrance, and the trial court must ensure that preclusion will not contravene public policy or result in manifest injustice. Exotics Hawaiʻi-Kona, 104 Hawaiʻi at 373, 90 P.3d at 265.

Applying the Dorrance test in the instant case, the Arbitrator determined that the first three Dorrance factors were met: the issues decided in the 2003 Parnell and 2007 Ikeda cases regarding holiday pay were identical to the issues being decided in the instant case, final judgments were issued on the merits in both prior cases with the awards confirmed by the circuit court, and the issue of the right to holiday pay was essential to the final judgments. Regarding the fourth factor, the Arbitrator determined that even though the City was not a party in the prior cases, "it [was] in privity under present doctrine to the [State][12] which litigated [the issue of holiday pay in the 2003 Parnell and 2007 Ikeda cases]."

The Hawaiʻi Supreme Court has noted that "[a]s to privity, current decisions look directly to the reasons for holding a person bound by a judgment." Bush v. Watson 81 Hawaiʻi 474, 480, 918 P.2d 1130, 1136 (1996) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 4436, at 339 (1981)). And where privity is found, "the nonparty should reasonably expect to be bound by the prior adjudication." City of Martinez v. Texaco Trading &

_____

[12] On the 2003 Parnell and 2007 Ikeda grievance forms, the employer was identified as the State and the department was identified as the University of Hawaiʻi. In the Pre-Award Decision, the Arbitrator referred to the State and University of Hawaiʻi interchangeably in reference to these two cases.

Transp., Inc., 353 F.3d 758, 764 (9th Cir. 2003) (internal quotation marks and citation omitted).

The Arbitrator considered the following facts in determining that the City was in privity with the State. The State and the City were members of the collective employer group[13] negotiating the multi-party CBAs, pursuant to HRS § 89-6(d). The State and the City were both signatories to the negotiated CBAs. Unit 1 employees, whether employed by the City or the State, are entitled to holiday pay under the same Hawaiʻi statutes and CBAs. The Arbitrator found that the litigators for the State in the 2003 Parnell and 2007 Ikeda cases were well-qualified and provided "comprehensive briefs . . . [and] well-conceived arguments" and the decisions in arbitration cases "where there is no reasonable uncertainty as to the meaning of certain provisions" have been accepted as binding.

The arbitrator's role is to interpret the CBA and the court's role "is to determine whether the arbitrator interpreted the [CBA], not whether he did so correctly." Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv., 241 F.3d 1177, 1178 (9th Cir. 2001). "[C]ourts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." United Steelworkers, 363 U.S. at 599, 80 S. Ct. at 1362. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court may not overturn his decision. Misco, 484 U.S. at 38, 108 S. Ct. at 371.

The Arbitrator found that the interests of the City in the instant grievances were identical to the State's in its litigation of the 2003 Parnell and 2007 Ikeda cases. To relitigate the issue of holiday pay would violate the public policy goal of issue preclusion to prevent inconsistent results

---

[13]    The members of the collective employer group included:  The State, the Judiciary, the City and County of Honolulu, County of Maui, County of Hawaiʻi, County of Kauai, and Hawaii Health Systems Corporation.

and multiple suits, eliminate vexation and expense to the parties, and promote finality and judicial economy. <u>Exotics Hawai'i-Kona</u>, 104 Hawai'i at 364-65, 90 P.3d at 256-57.

The circuit court did not err when it granted Union's motions to confirm the Pre-Award Decision and the Final Award.

### C.   REASONABLE COSTS AND ATTORNEY'S FEES

The City contends the circuit court erred when it found that reasonable costs and attorney's fees were authorized pursuant to HRS §§ 658A-17(d),[14] 658A-21(b),[15] and 658A-25(b) and (c)[16] and the Arbitrator did not disregard CBA Section 15.21.[17]

---

[14] HRS § 658A-17(d) provides in relevant part:

HRS §658A-17   Witnesses; subpoenas; depositions; discovery.
. . . .

(d)   If an arbitrator permits discovery under subsection (c), the arbitrator may . . . take action against a noncomplying party to the extent a court could if the controversy were the subject of a civil action in this State.

[15] HRS § 658A-21(b) provides:

HRS §658A-21   Remedies; fees and expenses of arbitration proceeding.
. . . .

(b)   An arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding.

[16] HRS § 658A-25 provides in relevant part:

HRS §658A-25   Judgment on award; attorney's fees and litigation expenses.
. . . .

(b)   A court may allow reasonable costs of the motion and subsequent judicial proceedings.

(c)   On application of a prevailing party to a contested judicial proceeding under section 658A-22 [Confirmation of award], 658A-23 [Vacating award], or 658A-24 [Modification or correction of award], the court may add reasonable attorney's fees and other reasonable expenses of litigation[.]

[17] CBA Section 15.21 provides:  "The fees of the Arbitrator, the cost of transcription and other necessary general costs, shall be shared equally by the Employer and the Union.  Each party will pay the cost of presenting its own case and the cost of any transcript that it requests."

In the Final Award, the Arbitrator awarded Union "reimbursement for extraordinary attorney[']s fees related to additional discovery related motions . . . for thirty hours . . . in addition to the previous award of 15 hours . . . made on December 19, 2007." The City does not address the December 2007 fifteen-hour award, but only argues that the Arbitrator exceeded his authority when he awarded Union thirty hours of attorney's fees to prepare its September 18, 2008 motion for discovery sanctions.

The City argues that the attorney's fees claimed by Union were for the preparation of Union's reply brief, a necessary general cost per CBA 15.21, and not the preparation of motions related to discovery sanctions. The City points to the affidavit of Union's attorney where the attorney details the breakdown of his services, indicating that much of the time charged was for preparation of Union's September 11, 2008 reply brief in support of its "Motion for Arbitration Decision and Award, Back Pay, Ten Percent Interest, and Attorney's Fees" filed on July 25, 2008 in the arbitration case.

Union, on the other hand, claims that these fees were not necessary general costs, but were sanctions in the form of attorney's fees. Union notes that under HRS § 658A-17(d), the arbitrator is authorized to impose sanctions on the noncomplying party "to the extent a court could if the controversy were the subject of a civil action in this State." Under Hawai'i Rules of Civil Procedure Rule 37(a)(4)(A), reasonable expenses including attorney's fees are allowed to the moving party unless the other party can show that its non-disclosure or lack of response is substantially justified or that the award of expenses is unjust.

It is within the Arbitrator's authority to impose discovery sanctions. Even if some of the hours should have been credited as necessary general costs, the circuit court and this

court are not free to vacate the orders, as requested by the City. Daeufer, 66 Haw. at 225, 659 P.2d at 728 ("[T]he fact that an arbitrator . . . enters an award that is contrary to the evidence adduced[] is insufficient grounds for judicial reversal.").

### D. PUBLIC POLICY

The City contends that the arbitration award should be vacated under the public policy exception to the general rule of giving deference to the arbitrator.

To apply the public policy exception, a court must find that the award violated an explicit, well-defined, and dominant public policy and the violation was clearly established. Inlandboatmen's Union, 77 Hawai'i at 193-94, 881 P.2d at 1261-62 (citing to Misco, 484 U.S. at 43-44, 108 S. Ct. at 373-74). The court's decision to vacate an arbitration award must be based on more than speculation or assumption. Inlandboatmen's Union, 77 Hawai'i at 194, 881 P.2d at 1262.

The City argues that the Arbitrator violated public policy by applying issue preclusion in violation of due process. Inasmuch as issue preclusion has been previously discussed and determined not to have been wrongly applied, the public policy exception is inapplicable.

The City also argues that the Arbitrator's award violated public policy because the Arbitrator decided issues not submitted to him, thus exceeding his scope of authority in violation of public policy. The scope of the Arbitrator's authority was previously discussed, and we concluded that the Arbitrator did not exceed his scope of authority. Therefore, in this regard, there was no violation of public policy.

The City did not establish that the award violated public policy, and the circuit court did not err when it confirmed the Pre-Arbitration Award and Final Award.

IV.

The Judgment filed on February 27, 2009 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Paul K. Hoshino and
Elisabeth A. K. Contrades,
Deputies Corporation Counsel,
City and County of Honolulu,
for Employer-Appellant.

Herbert R. Takahashi
Danny Vasconcellos
Rebecca L. Covert
(Takahashi Vasconcellos & Covert)
for Union-Appellee.

22